# Richmond

## C. B. MILLS v. VIRGINIA ELECTRIC AND POWER COMPANY.

November 28, 1955.

Record No. 4411.

Present, Eggleston, Spratley, Buchanan, Miller and Smith, JJ.

The opinion states the case.

*F. Lee Ford*, for the appellant.

*Hunton, Williams, Gay, Moore & Powell; Francis V. Lowden, Jr.* and *T. Justin Moore, Jr.*, for the appellee.

MILLER, J., delivered the opinion of the court.

C. B. Mills, an employee of defendant, Virginia Electric and Power Company, was seriously injured when he came in contact with an energized primary wire installed and maintained by the company. In his claim for compensation filed before the Industrial Commission of Virginia, he asserted that he had suffered an accidental injury arising out of and in the course of his employment.

The company filed a plea and defense under § 65-35,[1] Code of 1950, in which it asserted that claimant's injury was proximately caused by his wilful misconduct and violation of safety rules promulgated by the company and known to him.

As a result of complainant's injury, he suffered a retrograde amnesia, which produced a loss of memory of events immediately prior to and incident to his injury, and that prevented him from testifying as to how he was injured. On evidence offered by other witnesses, the hearing commissioner, W. F. Robinson, entered an award for compensation. In his written opinion he stated that claimant knew of and violated defendant's safety rules adopted for his benefit, but defendant had failed to prove that claimant's violation of the safety rules proximately caused his injury.

Upon review the Commission concluded that claimant's wilful misconduct and violation of the safety rules were the proximate cause of the injury. The award of the hearing commissioner was vacated and compensation denied. From that finding and order, Commissioner Robinson dissented, and we granted an appeal.

Claimant earnestly insists that the evidence does not support the finding of wilful misconduct and that if he were guilty of wilful misconduct, the evidence is insufficient to establish that his misconduct proximately caused his injury.

The rule promulgated by the Industrial Commission under authority of § 65-35 bearing upon the defense of wilful misconduct of an employee follows:

---

[1] No compensation shall be allowed for an injury or death:

(1) due to the employee's wilful misconduct, including intentional self-inflicted injury.

\*　　\*　　\*　　\*

(4) due to wilful failure or refusal to use a safety appliance or perform a duty required by statute or the wilful breach of any rule or regulation adopted by the employer and approved by the Industrial Commission and brought prior to the accident to the knowledge of the employee.

The burden of proof shall be upon him who claims an exemption or forfeiture under this section.

"Wilful Misconduct.—If the employer or insurance carrier intends to rely upon the defense of 'wilful misconduct' under Section 14 [now § 65-35] of the act, it shall file with the Commission, previous to the hearing, furnishing a copy of the same to the employee or his attorney, a statement of its intent to make such defense, together with a statement of the particular act or acts relied upon as showing wilful misconduct.

"In the absence of such plea the employer may introduce evidence of wilful misconduct upon the provisions of Section 65-35, as a defense to liability on the issue there was no accident arising out of and in the course of employment."

The defense filed by the company complies with the Commission's rule and is amply sufficient to meet the requirements of § 65-35.

The company's rules promulgated for the protection of its employees and contained in its safety manual required claimant to wear rubber gloves when working upon equipment carrying "voltage from 0 to 3500 phase to ground." Parts of sections 7 and 9 of the safety manual[2] embodying these rules were introduced in evidence. It was also shown that claimant was aware of these reasonable rules and requirements, and that they were rigidly enforced by the company.

On the day of the mishap a six-man crew of defendant's employees, under the supervision and direction of foreman L. S. Painter, was engaged in the repair of defendant's electric lines in the city of Newport News, Virginia. The undertaking required that the linemen work upon three or more poles, upon which an energized electric line was suspended. The crew, exclusive of Painter, consisted of one first class lineman, four second class linemen (including

---

[2] "Section VII, Subsection D, 2, b and c, on page 34 of the Virginia Electric and Power Company Safety Manual.

"(b) Employees working on overhead poles, ladders, or structures shall wear rubber gloves when working on energized conductors and equipment with voltage from 0 to 3,500 phase to ground.

"(c) Employees shall stop when the top of their heads are three feet or more below the lowest conductors or electrical equipment and put on their rubber gloves before going higher. If an employee prefers he may wear his rubber gloves from the ground up.

"Section IX, G, 2 and 3, found on page 66 of the Virginia Electric and Power Company Safety Manual.

"2. All wires must be treated as live unless disconnected from the source of supply, tested and grounded.

"3. All wires being installed on poles with existing circuits or wires shall be considered alive and employees, including helpers shall use rubber gloves in handling them."

claimant), and B. J. Walker, a less experienced employee, classified as a "second class lineman learner." Claimant had been in the employ of defendant for several years and was classified as a second class lineman. He had acquired considerable experience in work of this character, and the testimony of his foreman discloses that he was competent to undertake and perform the work assigned to him at the time he was injured.

Shortly prior to his injury Mills came down from a pole where he had been working, removed his rubber gloves and sleeves and placed them in the pocket on his belt. Foreman Painter then directed him to go up another pole where Walker was working "to show him and tell him" how to make a tie, which was termed by Painter as "quite a simple job."

To make a tie a short wire is placed around an insulator on the pole arm, and by it the energized wire is secured to the insulator. In this instance the tie wire was in place on the insulator, and the work required of claimant "was just a matter of tightening it up" to hold the energized wire more securely to the insulator.

The primary wire on which this tie was to be made carried a 3450 unit delta voltage, and when claimant was directed to make the tie he knew that this was a live wire and he had been warned by his foreman about working on an energized circuit.

After telling claimant to make the tie, Painter's attention was directed elsewhere and he did not see Mills go up the pole. How he became apprised of the mishap and what he saw is disclosed by the following testimony:

"Q. What called your attention to the accident?

"A. I heard an arc and heard somebody groan.

"Q. An electric arc?

"A. Yes, sir.

"Q. What did you see?

"A. I looked up the pole and Mills was in contact with his right hand and I said, 'Good God, somebody get down here quick.' "

In response to Painter's exclamation and request, Guy C. Higgins, the lineman first class among the crew, rescued Mills. He accomplished this by going up the pole, putting his own safety belt around Mills and then knocking Mills' hook loose and releasing his foot from where it was held by a guy wire. By freeing Mills' hook and foot, he was caused to fall away from the wire and break the contact. Higgins then applied resuscitation and carried Mills to the

ground. Both Higgins and another witness, J. H. Dawson, Jr., stated that when they heard Painter's exclamation, they looked and saw Mills and that his contact with the wire at that time was along the side of his face and ear. His hands were then hanging down and smoke was coming from his feet. When he was freed from his contact and brought to the ground, his rubber gloves were in his glove pocket and he had on his canvas-sleeved, leather-palmed gloves. Upon examination of the gloves that he was wearing, it was found that there was a burned hole through the inner leather surface over the middle finger of the right-hand glove.

In the attending physician's report, his injuries were described as "point burns on right hand and both feet and face. Third degree burns on both feet, left calf, right hand and right ear."

Upon evaluation of the evidence, all three of the commissioners concluded that claimant had violated reasonable safety rules promulgated for his protection and of which he was aware. In the majority opinion written by Commissioner Nuckols, there is the additional finding of fact that claimant's wilful misconduct in failing to wear his rubber gloves was the proximate cause of the accident. This finding is stated as follows:

"The leather glove which Mills was wearing at the time showed evidence of a burn at the middle finger. When first observed, following his contact with the energized line, Mills' hand was in contact with the wire. The only reasonable conclusion to be deduced from this fact is that his failure to observe the rule requiring him to wear rubber gloves while working on such lines was the proximate cause of the accident."

The questions of whether or not a claimant has been guilty of wilful misconduct and whether such misconduct was a proximate cause of the employee's accident are issues of fact. 58 Am. Jur., Workmen's Compensation, § 201, p. 710.

Section 65-94 provides that the decision of the Commission "shall be conclusive and binding as to all questions of fact * * *," and we have no right to disturb the Commission's finding of fact if it be supported by credible evidence.

"In applying this section [65-94], we have repeatedly held that the Industrial Commission's finding of fact which is sustained by credible evidence is binding upon this court." *Rust Engineering Co.* v. *Ramsey,* 194 Va. 975, 978, 76 S. E. (2d) 195. *Butler* v. *Nolde Brothers,* 189 Va. 932, 55 S. E. (2d) 36.

The facts in *Riverside & Dan River Cotton Mills, et al.* v. *Thaxton, etc.*, 161 Va. 863, 172 S. E. 261, show that the employee was instantly killed when he came in contact with an energized wire. There, as here, the company relied upon the defense of wilful misconduct, and it was proved that the safety rule was known to Thaxton. It required the employee to cut off the circuits to both the power line and the street light line before climbing any concrete pole carrying these circuits. Before climbing the concrete pole, Thaxton cut off the street light circuit but failed to cut the power line circuit and when he came in contact with the latter circuit, he was killed. Upon these facts compensation was denied Thaxton's dependent by the Commission on the ground of his wilful misconduct, and upon appeal we affirmed.

■ If the safety rule is reasonable and is known to the employee and for his benefit, and yet he intentionally does the forbidden act, then he is guilty of wilful misconduct within the meaning of § 65-35. The employer is not required to prove that the employee, with the rule in mind, purposely determined to break it.

"If an employee with years of experience * * * is to be allowed to recover compensation on account of an injury due directly to his disregard of an absolutely fundamental measure of safety, which he admits he well knew, then there would be no case in which the provisions of Section 14 [now § 65-35] of the act would apply." *Tate* v. *Blackwood Coal & Coke Co.*, 11 O. I. C. 38, 41 (1929). *King* v. *Empire Collieries Co.*, 148 Va. 585, 139 S. E. 478; *Herman* v. *Aetna Casualty & Surety Co.*, 71 Ga. App. 464, 31 S. E. (2d) 100.

■ Foreman Painter was the first one to see what part of claimant's body was in contact with the energized wire. When the noise made by the flashing arc caused him to look, Mills' right hand was upon the line. Higgins and Dawson did not look until they heard Painter's exclamation, and it was then that Mills' face was against the wire.

The evidence clearly proves that claimant knew of and violated the reasonable rule that required him to wear rubber gloves for his own safety when he undertook to make the tie. The Commission was warranted in concluding that defendant proved that claimant's right hand first came in contact with the energized wire. It was also justified in concluding that defendant had carried the burden of proof and established that claimant's violation of the reasonable rule

requiring him to wear rubber gloves when in close proximity to an energized wire was the proximate cause of his injury.

We find no error in the record and the order appealed from is affirmed.

*Affirmed.*