## Richmond

## THOMAS E. SPRUILL

v.

## C. W. WRIGHT CONSTRUCTION COMPANY, INC., AND INSURANCE COMPANY OF NORTH AMERICA

No. 1078-88-2

Decided June 20, 1989

COUNSEL

Robert E. Evans (Patrick M. Regan; Koonz, McKenney & Johnson, P.C., on brief), for appellant.

Harris D. Butler, III (William B. Pierce, Jr.; Williams, Butler & Pierce, on brief), for appellee.

OPINION

**BENTON, J.**—In this appeal we are asked to determine whether the Industrial Commission erred in finding that Thomas E. Spruill's claim for worker's compensation benefits was barred by his own willful misconduct in intentionally disregarding a safety rule promulgated by his employer. Because we conclude that the record does not contain credible evidence that Spruill intentionally disregarded the rule, we reverse.

Thomas Spruill was employed as a lineman by C.W. Wright Construction Company, Inc. and had obtained the level of class one lineman, the highest level of a class of three. On the day the incident occurred, C.W. Wright was under contract to convert and reconduct electrical lines in Alexandria, Virginia. The project involved pulling lower voltage 4 kilowatt lines and replacing them with higher voltage 19.9 kilowatt lines.

Spruill was installing a grounding wire to create a "dead span" on a segment of line spanning the road between two poles when he came in contact with an energized 4 kilowatt line. Spruill was working from a bucket above the ground and was not wearing rubber gloves when he came in contact with the wire. The contact

resulted in severe electrical burns to Spruill's hands, arms and lower abdomen, requiring, among other treatment, bilateral amputation at the shoulder of the left arm and just below the elbow of the right arm.

C.W. Wright had issued a safety manual to each of its employees prescribing the use of safety equipment when in the proximity of energized lines:

> Employees shall not touch or work on any exposed energized lines or apparatus except when wearing approved rubber gloves.
>
>     \*      \*      \*
>
> Rubber gloves and sleeves shall be put on before entering the working area within which energized lines or apparatus may be reached and shall not be removed until the employee is completely out of reach of this area.

This rule was informally known as the "ground to ground" rule. According to the testimony of James Grimes, the general foreman, "[t]hat means that before you leave the ground, the rubber gloves and sleeves have got to be on until you go and perform what duties you're going to perform and come back down to the ground." Grimes recognized, however, that when a lineman was working on a de-energized wire between grounding wires, the lineman could, by accepted practice, work in his bare hands. The lead foreman, Lawrence Parrish, also recognized that this was an accepted practice. Parrish stated that where it is unclear that the line is energized the lineman could "[w]alk down and check the meter to see if there's a transformer on." Alternatively, the lineman could "buzz test" the line. This procedure involves putting a pair of pliers to the line which, if energized, will create a blue and yellow or blue and white flame arc. However, Parrish testified that due to low voltage, it is harder to "buzz test" a 4 kilowatt line.

Harry John Nef, another foreman, testified that the safety regulations were strictly enforced by a disciplinary process commencing with reprimand, followed by suspension and termination. Safety supervisors conducted periodic safety inspections of job sites and issued contemporaneous reports noting any unsafe practices and violations. Monthly safety meetings were also conducted with the crew, and new equipment was issued to the workers at

this time.

Jerry Howard, the foreman who was supervising Spruill on the day of the incident, testified that he instructed Spruill to install a set of floats on the wire between the poles and to "cut" the floats, which would then deenergize the span of line between the two poles, allowing Spruill to safely ground the 4 kilowatt line. Howard also testified that he had told Spruill several times that the line he was to work on was hot. Spruill testified, however, that he believed that "there were floats cut on farther down the line" and, therefore, that the 4 kilowatt line he was to work on had already been deenergized. Spruill gave two additional reasons why he believed the line was not energized. First, Spruill read the blueprints of the project and interpreted those blueprints as indicating that the power was off. In addition, Spruill testified that Howard told him to "ground [the wire] before I cut the floats." This reassured Spruill that the line was deenergized because "you never ground it before you cut the floats, you always cut the floats and then kill the wire before you ground it."

The deputy commissioner hearing the case concluded that Spruill believed the line was deenergized but found that Spruill's mere belief was insufficient to establish that his action in failing to wear gloves was not willful and deliberate. The deputy thus held that C.W. Wright had met its burden of establishing Spruill's willful misconduct in failing to use rubber gloves as required by the safety manual. On review, a majority of the full commission affirmed. The full commission adopted the deputy's finding that Spruill believed the line was dead when he touched it with his bare hands but concluded that Spruill "was not protected by or justified in his stated belief that the line was deenergized" and "that [Spruill's] action in this case was willful failure and not mere negligence, because the rule involved was a known rule which was disregarded."

Factual findings of the commission are binding on appeal. Code § 65.1-98. However, if no credible evidence exists in support of a factual finding, the issue of sufficiency of the evidence is one of law for this Court to decide. *Goodyear Tire & Rubber Co. v. Watson*, 219 Va. 830, 833, 252 S.E.2d 310, 312 (1979). The question whether an employee was guilty of willful misconduct is a question of fact. *Uninsured Employer's Fund v. Keppel*, 1 Va. App. 162, 165, 335 S.E.2d 851, 852 (1985).

■ To prevail upon a defense of willful misconduct under Code § 65.1-38, C.W. Wright had to establish (1) that the safety rule was reasonable, (2) that the rule was known to Spruill, (3) that the rule was for Spruill's benefit, and (4) that Spruill intentionally undertook the forbidden act. *Mills v. Virginia Electric & Power Co.*, 197 Va. 547, 552, 90 S.E.2d 124, 127; *Riverside & Dan River Cotton Mills, Inc. v. Thaxton*, 161 Va. 863, 871, 172 S.E. 261, 264 (1934). The defense may be established without the necessity of proving that the employee, with the rule in mind, purposefully determined to break it. *Thaxton*, 161 Va. at 872, 172 S.E. at 264. It is sufficient to show that, knowing the safety rule, the employee intentionally performed the forbidden act. *Id.* The forbidden act in this case involved working on an energized line without the protection of rubber gloves and sleeves. It is apparent that Spruill engaged in the act and as a result was severely injured. Nevertheless, the question remains whether the evidence supports a finding that Spruill intentionally engaged in the forbidden act so as to bar recovery of workers' compensation benefits.

■ As the testimony of several of the witnesses at the hearing reveals, it was an accepted practice to work on deenergized lines without the protection of rubber gloves. This activity was viewed by C.W. Wright's formen as an unwritten exception to the "ground to ground" rule. Spruill's unrebutted testimony indicates that he was aware of both the rule and the exception. His testimony further reveals that he was under the impression that line was dead, and for this reason rubber gloves and sleeves were unnecessary. The deputy commissioner specifically found as a fact that Spruill believed that the line was dead, a finding which was adopted by the full commission. Such a finding is directly at odds with the conclusion that Spruill was aware of the risk and intentionally proceeded to work barehanded in the face of a known hazard. Spruill can hardly be said to have willfully disregarded a safety rule applicable only to live wires when he affirmatively believed the line was dead. Spruill's belief rendered the rule inapplicable. At most, Spruill's misreading of the blueprints and his failure to check the line before performing the work amounted to negligence. Negligence, regardless of how gross, will not bar recovery of workers' compensation benefits. *King v. Empire Collieries Co.*, 148 Va. 585, 590, 139 S.E. 478, 479 (1927).

Because the commission's finding of willful misconduct was not based on credible evidence, we reverse its decision.

*Reversed.*

Barrow, J., and Keenan, J., concurred.