**Salem**

KAREN R. BUZZO, et al.

v.

WOOLRIDGE TRUCKING, INC., et al.

No. 0015-93-3

Decided November 23, 1993

COUNSEL

Gary L. Lumsden, for appellant.

John Gregory, Jr.; Patricia Quillen, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellees.

OPINION

**KOONTZ, J.**—Karen R. Buzzo, widow of Timothy A. Buzzo (Buzzo), appeals from a decision by the Workers' Compensation Commission (the commission) holding that Buzzo's willful misconduct barred any award of death benefits to her and her daughter. The issue presented is whether Woolridge Trucking, Inc. (Woolridge, Inc.), employer, met its burden to establish willful misconduct. For the reasons that follow, we reverse the commission's decision.

## I. FACTUAL BACKGROUND

On April 18, 1991, Buzzo was killed while transporting lumber for Woolridge, Inc. Karen Buzzo filed an application for a hearing against the uninsured employer on July 19, 1991, seeking benefits for herself and her four year old daughter.

The Uninsured Employer's Fund (the fund) contended that Blue Ridge Wood Preservers (Blue Ridge), manufacturer of the lumber being transported, was the statutory employer. By order dated October 12, 1991, the commission added Blue Ridge as a party. By opinion dated July 10, 1992, the deputy commissioner denied benefits to Karen Buzzo and her daughter, holding that Buzzo's willful misconduct barred compensation. The deputy commissioner also dismissed Blue Ridge as a party. Upon review by the commission, the decision denying benefits was affirmed on December 7, 1992.

The parties stipulated that Buzzo was fatally injured while at work, that he was an employee of Woolridge, Inc. earning $440 per week at the time of the accident, and that his wife and four year old daughter were dependents.

Woolridge, Inc. employed Buzzo, who had previous truck driving experience, as a truck driver from April 10, 1991 until his death on April 18, 1991. On April 18, 1991, Buzzo was operating a 1980 Freightliner truck for Woolridge, Inc. He had been assigned to pick up lumber from Blue Ridge in Moneta, Virginia, and to deliver it to Woolridge Inc.'s lot in Roanoke, Virginia. Buzzo picked up his last load for the day at approximately 4:30 p.m. While en route to Woolridge Inc.'s lot, the truck overturned on a curve on Route 122 and Buzzo was fatally injured.

At the hearing, the employer and the fund defended the claim on the ground that Buzzo had violated a statutory duty. Glenn Moss (Moss), a Blue Ridge employee, loaded Buzzo's truck immediately prior to leaving work that day. Moss drove his car behind Buzzo's truck as they were pulling out of the lumber yard. Moss traveled behind Buzzo's truck until the Freightliner overturned. There were no other vehicles between Moss and the Freightliner.

Moss testified and gave the following account of the events leading to the fatal accident. He followed Buzzo at a distance of approximately "three to four car lengths" from the time they entered the highway until Buzzo entered a curve near the accident site. The Freightliner's brake lights came on when Buzzo negotiated a curve prior to reaching the curve where the accident occurred. When Buzzo crossed some train tracks on Route 122, Moss noticed that the back end of the trailer came off the ground; he thought the speed limit at that point was thirty-five miles per hour. The speed limit was fifty-five miles per hour on the stretch of road immediately preceding the curve where the accident occurred. Moss continued to follow Buzzo from a distance of approximately "five to six car lengths" until this straight stretch of road prior to the site of the accident. At that time, Buzzo began pulling away from him and Moss estimated Buzzo's speed at approximately sixty to sixty-five miles per hour. Just before Buzzo began to pull away from him, Moss was driving between fifty-five and fifty-seven miles per hour. As Moss approached the curve where the accident occurred, he noted there was a posted yellow "maximum safe speed" sign of thirty-five miles per hour on the road leading into the curve. Buzzo did not apply his brakes prior to entering this curve. As the truck entered this curve, Moss saw the front wheels come up off the road and the truck overturn. Moss then stopped his vehicle, and began to run up the hill near the truck. However, the truck caught fire and exploded before he reached it. Moss left the scene of the accident at the direction of a volunteer firefighter who had arrived.

Charles Swafford (Swafford) testified that he arrived on the scene shortly after the accident. He indicated that he was traveling in the opposite direction of the Freightliner when he came upon it, and that if there were people on the opposite side of the truck, he would not have been able to see them because of the curve in the road. Swafford did not see Moss or anyone else around the Freightliner or near the accident site.

Trooper Michael W. Rorer (Rorer) of the Virginia State Police Department arrived at the scene approximately one-half hour after the accident. He testified that he had been on the Virginia State Police force for approximately sixteen years, investigating an average of one-hundred fifty to one-hundred sixty accidents each year. Pursuant to his investigation, Rorer found "yaw marks" in the road at the scene which, he explained, are caused by excessive pressure in the side of the tire while it is still rolling. He further explained that "yaw marks" looked different than brake marks, which occur when the tire stops rolling and is skidding. He testified that he did not find any brake marks at the scene. The police accident report, which was prepared by Rorer, states that the speed limit at the location of the accident was fifty-five miles per hour and places Buzzo's speed prior to the accident at fifty-five miles per hour. The report further states that Buzzo "failed to negotiate curve, overturned and burned." Rorer testified that preceding the accident crash site there was a posted yellow thirty-five mile an hour maximum safe speed sign. Finally, he testified that in his opinion he believed the accident was caused by excessive speed. Although Rorer took a number of pictures of the accident site just after the accident, there is no picture of the thirty-five mile per hour maximum safe speed sign.

George Woolridge (Woolridge), owner of Woolridge, Inc., testified that he had been hiring drivers since 1984 and was aware that a number of his drivers had received speeding tickets. Woolridge testified that he met with Buzzo "on a Friday" and told Buzzo "we need to keep it down." Woolridge further testified that when he viewed the accident site the day after the accident, he saw a road sign located in the area approaching the fatal curve that indicates a maximum safe speed of thirty-five miles per hour.

James Johnson (Johnson), who operated the Freightliner from mid-1990 to approximately November 1990, testified that the speedometer on the Freightliner did not work when he drove it. Although he brought the broken speedometer to his employer's attention, it was not

fixed during the period of time that Johnson was assigned to drive the vehicle. Johnson testified that the tachometer was working on the truck and that he could gauge his speed from within five to ten miles depending on the situation. He testified that on prior occasions he had driven through the accident site at sixty-five to seventy miles per hour "to get a run at the hill."

Tony Foutz (Foutz), who drove the Freightliner after Johnson until mid-March 1991, testified that neither the speedometer nor tachometer worked on the Freightliner when he drove it and that the speedometer had not been repaired although he reported it broken three or four times. Foutz testified that he could not judge his speed without the speedometer. Foutz testified that he had commented to Larry Overstreet, Woolridge's mechanic, that Buzzo was "running hard." Foutz defined running hard as "doing a good job . . . keeping up," and that Buzzo could get his load, get tarped and get finished "without stopping at stores and stuff like that." Although he stated that he meant this as a compliment to Buzzo, he further testified that he was worried about the truck as far as Buzzo running the speed he was running with the truck.

Larry Overstreet (Overstreet) testified that Foutz expressed concern to him that Buzzo was driving too fast and tailgating. Overstreet testified that he spoke with Buzzo, telling him, "that truck will kill you" and to slow down. After Overstreet warned Buzzo to slow down, he told George Woolridge, who also confronted Buzzo about his driving. Overstreet testified that he last worked on the Freightliner in April 1990. At that time, he put new brakes on the truck and new steering gear. He confirmed that the speedometer did not work, and had not been repaired prior to the accident.

## II. WILLFUL MISCONDUCT

■ The elements of the defense of willful misconduct are statutorily stated as follows:

No compensation shall be awarded to the employee . . . for an injury or death caused by:

1. The employee's willful misconduct or intentional self-inflicted injury;

. . . .

4. The employee's willful failure or refusal to use a safety appliance or perform a duty required by statute;

5. The employee's willful breach of any reasonable rule or regulation adopted by the employer and brought, prior to the accident, to the knowledge of the employee . . . .

Code § 65.2-306(A). To successfully raise a defense of willful misconduct, the employer must establish "(1) that the safety rule [or other duty] was reasonable, (2) that the rule was known to [the employee], (3) that the rule was for [the employee's] benefit, and (4) that [the employee] intentionally undertook the forbidden act." *Spruill v. C.W. Wright Constr. Co.,* 8 Va. App. 330, 334, 381 S.E.2d 359, 360-61 (1989). Furthermore, the employee may rebut the defense by showing that the rule was not kept alive by bona fide enforcement or that there was a valid reason for his inability to obey the rule. *See* Arthur Larson, *Worker's Compensation Law: Cases, Materials and Text* § 62 (1992).

■ Proof of negligence, even gross negligence, alone will not support the defense, for willful misconduct "imports something more than a mere exercise of the will in doing the act. It imports a wrongful intention." *Uninsured Employer's Fund v. Keppel,* 1 Va. App. 162, 164, 335 S.E.2d 851, 852 (1985) (quoting *King v. Empire Collieries Co.,* 148 Va. 585, 590, 139 S.E. 478, 479 (1927)).[1] It is not necessary for the employer to prove that the employee purposefully determined to violate the rule, only that, "knowing the safety rule, the employee intentionally performed the forbidden act." *Spruill,* 8 Va. App. at 334, 381 S.E.2d at 361.

■ "[W]hether an employee was guilty of willful misconduct is a question of fact." *Id.* at 333, 381 S.E.2d at 360. A factual finding by the commission "will not be disturbed on appeal" unless unsupported

---

[1] The recent holding of our Supreme Court is instructive:

Gross negligence and ordinary negligence differ from one another only in degree, but the species of tortious conduct which the authorities have variously labelled willful and wanton conduct, or reckless misconduct, or willful and intentional conduct, differs in kind from both of them. *See Kennedy v. McElroy,* 195 Va. 1078, 1081, 81 S.E.2d 436, 439 (1954). "Negligence conveys the idea of heedlessness, inattention, inadvertence; willfulness and wantonness convey the idea of purpose or design, actual or constructive." *Boward [v. Leftwich,* 197 Va. 227, 231, 89 S.E.2d 32, 35 (1955)] (quoting *Thomas [v. Snow,* 162 Va. 654, 660, 174 S.E. 837, 839 (1934)]).

*Infant C. v. Boy Scouts of America, Inc.,* 239 Va. 572, 582, 391 S.E.2d 322, 327-28 (1990).

by credible evidence. *Rose v. Red's Hitch & Trailer Servs., Inc.,* 11 Va. App. 55, 60, 396 S.E.2d 392, 395 (1990).

## III. BUZZO'S CASE

█ In examining this case, we distinguish between the finding of fact made in determining willful misconduct and the legal concept of willful misconduct itself. The commission was privileged to draw a reasonable inference from the evidence as to Buzzo's conduct upon approaching the curve where he met his death. *Hawks v. Henrico County Sch. Bd.,* 7 Va. App. 398, 404, 374 S.E.2d 695, 698 (1988). That action of the commission is a finding of fact subject to the credible evidence standard. *Spruill,* 8 Va. App. at 333, 381 S.E.2d at 360. However, whether Buzzo's conduct in the abstract constitutes willful misconduct is a mixed question of fact and law and is reviewable by this Court on appeal. *Israel v. Virginia Employment Comm'n,* 7 Va. App. 169, 172, 372 S.E.2d 207, 209 (1988). We find that, as a matter of law, the facts adduced at the hearing are insufficient to support a finding of willful misconduct.

Viewing the evidence in the light most favorable to the party prevailing below, *Crisp v. Brown's Tysons Corner Dodge, Inc.,* 1 Va. App. 503, 504, 339 S.E.2d 916, 916 (1986), there was a posted maximum safe speed for the curve of thirty-five miles per hour. However, caution signs are not speed limitation signs, and disregard of them is not an independent violation of traffic regulations apart from the duty imposed by the statutory recklessness standard.[2] *See Garst v. Obenchain,* 196 Va. 664, 671, 85 S.E.2d 207, 212 (1955) (decision under former applicable statute). Thus, Buzzo may have been guilty of driving too fast under the circumstances of the heavy load on his truck and the curve in the highway, and in so doing, his conduct was negligent, possibly even grossly negligent. However, proof of gross negligence does not equate with proof of willful misconduct. *See Morris v. Dame,* 161 Va. 545, 569-70, 171 S.E. 662, 670-71 (1933) (violation of the reckless driving statute did not, of itself, establish willful or wanton conduct). Thus, proof of Buzzo's violation of the statute through negligence, without more, does not support a finding of willful misconduct under any of the three applicable circumstances of Code § 65.2-306(A).

---

[2] "A person shall be guilty of reckless driving who exceeds a reasonable speed under the circumstances and traffic conditions existing at the time, regardless of any posted speed limit." Code § 46.2-861.

To support a finding of willful misconduct, the record must show that Buzzo's negligent conduct was done with "a wrongful intention." We find it impossible, and illogical, to accuse Buzzo of "intentionally performing the forbidden act" of speeding in violation of Code § 46.2-861 or his employer's warnings when the evidence is clear that Woolridge, Inc. had not provided him with the means of accurately determining the speed of his vehicle. There is no evidence in the record, despite Buzzo's being an experienced truck driver, that, under the given circumstances, he could determine his speed without a speedometer, using only the tachometer (assuming, in the light most favorable to Woolridge, Inc., that this device was working). Imputing that ability to Buzzo would be an act of mere speculation.

Finally, Moss's testimony that Buzzo had applied his brakes on one occasion before reaching the accident site is not evidence of willful misconduct at the time of the accident. At best, Buzzo's failure to apply his brakes is still evidence only of negligence in derogation of Code § 46.2-861. It does not show that Buzzo intentionally violated Woolridge, Inc.'s safety rule. Even under the "light-most-favorable" standard, it is impossible for us to say that Moss could know that Buzzo failed to apply his brakes in order to intentionally exceed a safe speed. We would be required to accept that Moss had some knowledge of Buzzo's will and actions—knowledge that he clearly could not have had.

For these reasons, we find that the commission erred, not in its findings of fact as to Buzzo's conduct, but as a matter of law in determining that this conduct rose to the level of willful misconduct. Accordingly, we reverse the commission's decision and remand the case for entry of an award consistent with this opinion.[3]

*Reversed and remanded.*

Elder, J., and Fitzpatrick, J., concurred.

---

[3] The Uninsured Employer's Fund chose not to cross-appeal the decision of the commission dismissing Blue Ridge from the claim. Therefore, we do not address this issue except to note that the failure to make a timely appeal renders the decision of the commission on that issue final.