COURT OF APPEALS OF VIRGINIA

Present:  Judges Baker, Coleman and Overton
Argued at Salem, Virginia


SALLY INEZ ADAMS, on behalf of her niece,
 JAMILL C. BOYSAW

v.        Record No. 0260-94-3            OPINION BY
                                   JUDGE SAM W. COLEMAN III
HERCULES, INC. and                     DECEMBER 29, 1995
 INSURANCE COMPANY OF NORTH AMERICA

          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Sally Inez Adams, pro se.

              Monica L. Taylor (Melissa W. Scoggins; Dale W. Webb;
              Gentry Locke Rakes & Moore, on brief), for appellee.


     In this workers' compensation appeal, Sally Inez Adams, on

behalf of her niece, Jamill C. Boysaw, contends that the

commission erred in denying an award for death benefits pursuant

to Code § 65.2-512.  The commission denied the claim under

Code § 65.2-306(A)(1) on the ground that Ivery Adams Boysaw

(Boysaw), the employee who died in an industrial accident,

engaged in willful misconduct.  Because credible evidence

supports the commission's finding that Boysaw engaged in willful

misconduct, we affirm the denial of the claim.

     Boysaw and Mary Scott Duncan, both of whom worked in the

solvents department at Hercules, Inc., died on October 18, 1991,

in the course of their employment while assisting with the

transfer of ether from a railroad car to a storage tank.  The

storage tanks are located within a concrete enclosure called a

"dike," which controls spills from the tanks.  Employees access

the dike by climbing a set of metal stairs to a platform and descending into the enclosed area. A sign at the top of the steps states, "Danger," and warns that a permit is required for entry. Co-workers found Boysaw and Duncan's bodies in the containment dike surrounding tank W-9. Boysaw and Duncan died from full cardiopulmonary arrest secondary to ether exposure.

Hercules contends that Boysaw and Duncan violated a company safety rule by entering the dike without a confined space entry permit. Prior to July 1990, employees could enter the dikes without permits. In July 1990, however, the Safety Department at Hercules sent to Monty Brown, the supervisor of the solvents department, a memorandum requiring employees to obtain confined space permits before entering the dikes. Brown called a meeting on July 16, 1990, to discuss this memorandum and circulated a written safety rule that required a confined space permit to enter the dikes for any reason. The requirement to obtain a confined space permit enables a safety inspector to measure the concentration of ether vapors in the air before employees enter the dike. Ether robs the air of oxygen, and prolonged exposure to high levels of ether is dangerous and can be fatal. At the close of the meeting, Brown asked the employees present to sign the back of the rule. Boysaw was present and signed the rule, which took effect immediately after the meeting.

Chevella Heslep, a safety inspector at the time of the

accident, was responsible for granting permits for the solvents area. According to Heslep, she "strictly" enforced the permit rule, which was "for everyone's safety." Heslep testified that she had granted permits to Boysaw and Duncan on several occasions, but that neither employee requested a permit on the evening of the fatal accident. Heslep further testified that she saw Boysaw and Duncan's bodies in the dike, that the bodies were saturated with ether, that the "Danger" sign posted at the entrance to the dike was in place, and that Boysaw's hard hat and a radio Boysaw and Duncan shared were on the platform under the sign.

Charles Gardner, Director of Safety and Loss Prevention at Hercules, investigated the accident and prepared a report of his investigation. Gardner testified that Boysaw and Duncan were responsible for controlling the valves during the ether transfer to storage tanks W-12, W-10, and W-8, and that they did not have to enter the dike to perform this operation. According to Gardner, his investigation revealed that ether was mistakenly pumped into tank W-9, and action was taken to "equalize" tanks W-9 and W-10. To equalize the ether level between the two tanks would require the operator to enter the dike and open the discharge valves between them to reduce an overflow in one tank. Hercules' policy does not allow equalization because it contaminates the ether in the two vessels. Because tank W-10

contained contaminated ether, and because ether stains were present on the concrete floor of the dike surrounding tank W-9, Gardner concluded that a spill had occurred due to the overflow causing the operators to enter the dike to "equalize" the tanks. Furthermore, Gardner testified that following the accident, he recovered two buckets, one of which was partially filled with ether, two dust pans, a broom, folded glasses, gloves, a pen, and shoes from the confined area where the bodies were found. These items also led Gardner to conclude that Boysaw and Duncan had entered the dike to clean up the ether spill. The evidence also showed that they had not obtained a confined space entry permit.

The deputy commissioner denied the claim for benefits on the ground that Boysaw engaged in willful misconduct in violation of Code § 65.2-306(A)(1) by entering the containment dike in violation of a company safety rule. The full commission affirmed the deputy commissioner's opinion.

The claimant contends, in effect, that, although Boysaw's failure to follow a prescribed safety rule may have been negligence, her actions could not be considered misconduct when she was in good faith dealing with an emergency situation in furtherance of her employer's business interest. She argues that the commission's action barring a workers' compensation claim on the ground of misconduct for acts that amount only to negligence countermands the very purpose of the Workers' Compensation Act,

which limits the amount that employees can recover from their employers for workplace injuries in exchange for the employers giving up certain common-law defenses, such as contributory negligence and assumption of the risk. The claimant asserts that because the defense of misconduct works a forfeiture of benefits, it should be narrowly applied to acts where the employee was not attempting to further the employer's business interest or was clearly engaged in conduct outside of the employee's duties. As persuasive as the claimant's argument may be, it is contrary to established law in Virginia.

In Mills v. Virginia Electric & Power Co., 197 Va. 547, 90 S.E.2d 124 (1955), the Supreme Court upheld the commission's finding that a lineman for VEPCO was guilty of willful misconduct when he disregarded a company rule requiring that he wear rubber gloves when working on an energized line. The Supreme Court said in Mills:

> If an employee with years of experience . . . is to be allowed to recover compensation on account of an injury due directly to his disregard of an absolutely fundamental measure of safety, which he admits he well knew, then there would be no case in which the provisions of Section 14 [now § 65.2-306(A)(1)] of the act would apply.

Id. at 552, 90 S.E.2d at 127 (quoting Tate v. Blackwood Coal & Coke Co., 11 O.I.C. 38, 41 (1929)). Although the lineman in Mills was working in furtherance of his employer's business

interest, his failure to comply with the safety rule was held to be misconduct. Thus, we consider whether in this case the evidence is sufficient to support the commission's finding of willful misconduct.

To prevail on a claim for death benefits, a claimant must prove a causal relationship between an industrial accident and the employee's death. Lilly v. Shenandoah's Pride Dairy, 218 Va. 481, 483, 237 S.E.2d 786, 787 (1977). Hercules concedes that Boysaw's death arose out of and during the course of her employment. However, Hercules raises the affirmative defense of willful misconduct.

To prevail on the defense of willful misconduct, the employer must prove that (1) the safety rule was reasonable, (2) the employee knew about the rule, (3) the rule was intended for the employee's benefit, and (4) the employee intentionally undertook the forbidden act. Spruill v. C.W. Wright Constr. Co., 8 Va. App. 330, 334, 381 S.E.2d 359, 360-61 (1989). The claimant concedes that the evidence supports the first three factors, but contends that credible evidence does not support the finding that Boysaw intentionally undertook the forbidden act.

Whether an employee is guilty of willful misconduct is a question of fact to be resolved by the commission and the commission's finding is binding on appeal if supported by credible evidence. Watford v. Colonial Williamsburg Found., 13

Va. App. 501, 505, 413 S.E.2d 69, 72 (1992). In determining on appeal whether credible evidence supports the commission's findings, this Court reviews the evidence in the light most favorable to the prevailing party and does not retry the facts or reweigh the preponderance of the evidence. Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991).

Although neither Boysaw nor Duncan requested a permit to enter the dike area, their bodies were found in the dike and Boysaw's hard hat and radio were found on the platform under the "Danger" sign. Moreover, Gardner's testimony that someone attempted to equalize tank W-9, together with the stains on the floor of the dike and the items Gardner recovered from the dike after the accident, were sufficient to prove that an ether spill had occurred at the tank and that someone had attempted to clean up the spill. Credible evidence, therefore, supported the commission's finding that Boysaw and Duncan "intentionally undertook the forbidden act" of entering the dike without a confined space permit. Accordingly, absent proof by the claimant of an applicable exception to the safety rule requiring that an employee obtain an entry permit, or a valid reason for the employee's failure to obtain the permit, the commission did not err by denying the claim on the ground that Boysaw engaged in willful misconduct.

A claimant may rebut the employer's willful misconduct

defense "by showing that the rule was not kept alive by bona fide enforcement or that there was a valid reason for his inability to obey the rule."  Buzzo v. Woolridge Trucking, Inc., 17 Va. App. 327, 332, 437 S.E.2d 205, 208 (1993).  Both Heslep and Gardner testified that Hercules "strictly enforced" the rule requiring a permit to enter a confined space.  Thus, unless the evidence showed that Boysaw had a valid reason for failing to obey the permit rule, the willful misconduct defense applies.

In Spruill, we held that credible evidence did not support the commission's finding of willful misconduct because, although the employer's rule required employees to wear gloves when working on live power lines, "it was an accepted practice to work on deenergized lines without the protection of rubber gloves." Spruill, 8 Va. App. at 334, 381 S.E.2d at 361.  We held that the rule was inapplicable because the claimant knew about the unwritten exception to the rule and believed the line he was working on was deenergized.  Id.

Here, the evidence showed that, at the time of the accident, Hercules had adopted safety rules requiring employees to contain spills under certain circumstances before notifying a supervisor.  At the hearing before the deputy commissioner, Heslep read Hercules' Rule 5.1.10 of Procedure Number 4-2-1F, which states, "[a]ll leaks, spills or overflows shall be contained, if possible, and then supervision shall be notified immediately (see

Procedure 4-2-25)." Furthermore, both Heslep and Gardner testified that Rule 5.1.7 of Procedure Number 4-2-25 states, "[i]f needed to control the spill or keep the incident from getting worse, emergency measures first shall be taken and supervision notified immediately after containing the spill is accomplished." Heslep, however, testified that these rules do not apply to spills in the dikes because such spills are already "contained within [the dike's] concrete walls." In addition, Gardner testified that the dikes were "approved confining locations for the solvents, acids or whatever is contained in the vessel," and that even if a spill did occur, an employee could not enter the dike without a confined space permit.

Although claimant contends that Rule 5.1.10 does not apply to leaks, spills, or overflows in the dike, Gardner's testimony is the only evidence in the record that addresses the proper interpretation and application of these rules. No evidence in the record proves that Boysaw interpreted or understood Rule 5.1.10 to authorize or require her to contain a spill in the dikes before notifying her supervisor or obtaining a permit. Accordingly, the evidence does not provide a valid reason for Boysaw's failure to obtain a permit before entering the dike.

We hold that credible evidence supports the commission's finding that Boysaw engaged in willful misconduct by entering the dike without a permit, and we affirm the denial of the claim.

<u>Affirmed.</u>