COURT OF APPEALS OF VIRGINIA


Present:  Judges Bumgardner, Felton and Senior Judge Overton
Argued at Chesapeake, Virginia


HERB O. BYAM
                                        MEMORANDUM OPINION* BY
v.    Record No. 2783-02-1          JUDGE RUDOLPH BUMGARDNER, III
                                             APRIL 8, 2003
NORTH STAR CONSTRUCTION CORPORATION AND
 AMERICAN INTERSTATE INSURANCE COMPANY


           FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Allen Lotz (Jeffrey F. Brooke; Huff, Poole &
              Mahoney, P.C., on briefs), for appellant.

              William C. Walker (Christopher J. Wiemken;
              Taylor & Walker, P.C., on brief), for
              appellees.


     Herb O. Byam appeals the Workers' Compensation Commission's

denial of his claim for benefits on the ground that he willfully

violated a known safety rule, Code § 65.2-306.  North Star

Construction Corporation appeals the commission's determination

that the worker's injury arose out of the employment.  We

conclude credible evidence supports the commission's finding

that the worker willfully violated a safety rule and affirm.

     The worker was an experienced steel worker employed by the

employer, a heavy highway construction company.  On June 29,

1999, he was working on a bridge twenty-five feet off the ground

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

installing fall protection equipment.  The worker fell and sustained head and brain injuries.  He has no recollection of the fall, and no eyewitnesses observed him before the fall.

The deputy commissioner initially found the injury did not arise out of the employment and denied benefits.  The full commission reversed and remanded the case.  On remand, the deputy commissioner denied benefits because the worker willfully violated a safety rule, and the full commission affirmed.

To establish a willful violation of a safety rule, the employer must prove:  (1) the rule was reasonable; (2) the rule was known to the employee; (3) the rule was promulgated for the employee's benefit; and (4) the employee intentionally performed the forbidden act.  Code § 65.2-306[1]; Buzzo v. Woolridge Trucking, Inc., 17 Va. App. 327, 332, 437 S.E.2d 205, 208 (1993); Spruill v. C.W. Wright Constr. Co., 8 Va. App. 330, 334, 381 S.E.2d 359, 360-61 (1989).  The worker concedes the evidence established the first three elements of the defense.  He maintains no evidence showed he willfully violated the rule.

The issue of willful misconduct is a question of fact binding on appeal if supported by credible evidence.  Brockway v. Easter, 20 Va. App. 268, 271-72, 456 S.E.2d 159, 161 (1995).

---

[1] Code § 65.2-306(A)(5) provides that "[n]o compensation shall be awarded to the employee . . . for an injury . . . caused by . . . [t]he employee's willful breach of any reasonable rule or regulation adopted by the employer and brought, prior to the accident, to the knowledge of the employee . . . ."

We review the evidence in the light most favorable to the employer but do not retry the facts or reweigh the preponderance of the evidence. Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991).

The employer's safety rule provided that when working six feet above the ground or higher, workers must wear a safety harness. The lanyard of the harness must be attached to a fixed point at all times. The lanyard was a five-foot cord with a hook at each end. The worker hooked one end to his harness and the other to a fixed point.

The worker knew the consequences of failure to comply with the rule and was conscientious about complying with it. He even provided his own harness and quality lanyard because, "It's my life, my lanyard." He conceded the employer required him to be tied-off at all times while working on the bridge. He also recalled being tied-off at all times on this job.

The worker was installing a fall protection system on a bridge. Five steel girders or I-beams had been set across two concrete abutments. The girders were secured by "X" shaped cross frames, with steel horizontal members at the top and bottom. The worker's task was to secure "L" shaped stanchions, temporary vertical posts, with bolts to the top of each girder. Once the stanchions were secured, a safety cable or lifeline was suspended from one abutment to the other. The workers installing the deck of the bridge would then hook to the cable.

To install the stanchions, the worker would walk to the base of the girder, hook his safety harness onto the cross frame, and climb either the cross frame or a ladder[2] to the top of the girder. The top of the girder was approximately nine feet above the abutment and twenty-five feet above the road below. The worker would sit on the girder and secure the bolts into pre-drilled holes.

Stanchions five and four had been completely secured, stanchion three was only partially bolted, and stanchions two and one were not yet in position. The defendant landed on the ground between girders three and two. John Liles, company executive vice president and safety officer, concluded, "If Mr. Byam fell from that bridge, he was installing fall protection at the time that he fell." That was the only work being done on the bridge at that time. The worker's harness was cut from his body after the fall and admitted into evidence. It was intact. Both lanyard hooks were attached to a hook on the back of the harness. The harness and lanyard were not broken or defective.

The deputy concluded the worker was bolting stanchions as assigned, he was not tied-off to a fixed object, and his injury was caused by the failure to be tied-off. The commission's finding is a reasonable inference from the fact that the worker's harness and lanyard were intact, he was assigned to

---

[2] When the worker fell, there was a ladder in place at stanchion four.

- 4 -

bolt stanchions, bolting the stanchions was the only job being performed at that time, and he fell where the work was to be performed.

The employer is not required "to prove that the employee purposefully determined to violate the [safety] rule, only that, 'knowing the safety rule, the employee intentionally performed the forbidden act.'" Buzzo, 17 Va. App. at 332, 437 S.E.2d at 208-09 (quoting Spruill, 8 Va. App. at 334, 381 S.E.2d at 361).

In Mills v. Virginia Elec. & Power Co., 197 Va. 547, 90 S.E.2d 124 (1955), the worker was injured while securing an energized wire. The worker knew the wire was "live" and that he was required to wear rubber gloves when working on live wires. Id. at 549, 90 S.E.2d at 125. The Court found the defendant guilty of willful misconduct because he was not wearing his gloves. In denying his claim, the Court noted that

> "If an employee with years of experience
> . . . is to be allowed to recover
> compensation on account of an injury due
> directly to his disregard of an absolutely
> fundamental measure of safety, which he
> admits he well knew, then there would be no
> class of cases in which the provisions of
> . . . [Code § 65.2-306] of the act would
> apply."

Mills, 197 Va. at 552, 90 S.E.2d at 127 (quoting Tate v. Blackwood Coal & Coke Co., 11 O.I.C. 38, 41 (1929)).

In this case, the safety rule applied, the worker was an experienced steel worker, knew about the rule and its purpose, but was not in compliance when he was injured. The evidence

supports the commission's finding that the employer proved the affirmative defense.

The worker contends he rebutted the defense of violation of a safety rule by either showing the rule was not enforced or the job required him to be unhooked at times. Buzzo, 17 Va. App. at 332, 437 S.E.2d at 208.

The worker contends he could not perform his task while tied-off to a fixed point at all times. He testified it was not possible to be tied-off "[w]hen you're switching the lanyard from one safe point to the other." Jesse Konefal, an employee at the time, testified that the job required the worker to unhook the lanyard "to get from where you were standing to where you needed to be working."

Liles testified a worker could secure the stanchions in place while tied-off at all times. A videotape shows the job supervisor, Steve Marciniak, performing the worker's assigned task. At no time was the worker unhooked when working over a height. The assigned task did not contemplate movement from one point to another while above the ground.

The deputy commissioner resolved any conflict in the evidence in favor of the employer. Credible evidence supports the deputy's conclusion that each stanchion could be bolted while the safety harness was secured to a fixed point. There was no legitimate reason for the worker not to use the safety device.

The worker also maintains the safety rule was not strictly enforced. Whether the safety rule was not strictly enforced is a mixed question of law and fact, and the commission's ruling is not binding on appeal. Virginia Elec. & Power Co. v. Kremposky, 227 Va. 265, 270, 315 S.E.2d 231, 234 (1984).

In Gwaltney of Smithfield, Ltd. v. Hagins, 32 Va. App. 386, 393-94, 528 S.E.2d 162, 166 (2000), the worker injured her hand while cleaning out debris from a machine. The employer defended on the ground that she violated their safety rule by using her hands to do so. The worker successfully rebutted the defense because she testified her supervisor told her to use her hands, she had observed him doing so, and other witnesses corroborated her testimony.

In this case, the worker testified that wearing a harness and being attached all the time when working on the bridge was "the law." Liles and Marciniak both testified the safety rule was enforced. State highway construction inspectors were at the site daily and would have reported safety violations. No violations were reported. Konefal's testimony was the only evidence that the safety rule was not enforced. He testified that he understood Marciniak wanted the workers to get the job done quickly, and if that included failing to tie-off for certain jobs, so be it. The commissioner believed the employer's evidence. It was credible evidence and supports the finding that the safety rule was strictly enforced.

- 7 -

We conclude the commission did not err in finding that the worker violated a known safety rule and failed to show he was justified in doing so or to show the rule was not strictly enforced.  Accordingly, the commission's decision is affirmed.[3]

Affirmed.

---

[3] Since we find the worker was barred from receiving benefits, we do not address the employer's cross-appeal that the worker's injury did not arise out of the employment.