COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Petty and McCullough
Argued at Lexington, Virginia


MINOVA USA AND
  NEW HAMPSHIRE INSURANCE COMPANY

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1669-11-3                      JUDGE STEPHEN R. McCULLOUGH
                                                          MAY 8, 2012
JAMES EDWIN KISTLER, II


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            S. Vernon Priddy III (Two Rivers Law Group, P.C., on brief), for
            appellants.

            Gerald F. Sharp (Gerald F. Sharp, P.C., on brief), for appellee.


        Minova USA and its insurance carrier (collectively "employer") appeal from a decision of

the commission awarding benefits to James Edwin Kistler, II.  The employer contends that the

commission erred in:  (1) holding that Mr. Kistler suffered an injury in the April 9, 2010 incident;

(2) crediting the assessment of Mr. Kistler's injury made by a physician's assistant over the

assessment made earlier by his treating physician; (3) holding that no action on the part of a

representative of the employer rose to the level of an "express order" to Mr. Kistler; and (4) failing

to find that the claimant's actions were more than negligence and a desire to perform his job.

                                         BACKGROUND

        On April 9, 2010, Kistler was operating a plate press.  His job consisted of operating the

press, tying steel plates with wire in bundles, and then stacking the plates on a pallet.  The plates can

be stacked on a pallet using a turntable, which operates like a "lazy Susan."  Kistler, however, did

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

not use the turntable. He explained that it is easier to stack a 30 inch by 30 inch pallet with 6 by 16 inch plates without the turntable because the turntable is too big for such pallets. This motion, however, forced him to reach farther forward than if he had stacked the plates using the turntable, thus placing more weight on his arms and shoulders.

While stacking plates, Kistler felt that something had "popped" in his shoulder and he felt a "tearing sensation." He felt "sudden weakness and excruciating pain," and stated that "the pain and the sensation . . . was like a rubber band snapping." His arm "just dropped." He promptly sought treatment at the hospital.

Initially, Dr. Christopher Goss concluded that the injury was work related. Dr. Goss ordered an MRI to further evaluate the injury. Following the MRI, Dr. Goss noted that "[a]ccording to the MRI results, the left rotator cuff appears to be a chronic injury and not acute injury. However, he also has a tear of his biceps tendon, question whether this is new or old." Dr. Goss referred Kistler to Appalachian Orthopedics "for evaluation and treatment" and to determine whether "the orthopedic surgeon feels as though this is an acute or chronic injury. If it is acute, then it would be a worker's compensation claim. If it is chronic, it is not a worker's compensation claim."

In an evaluation dated April 28, 2010, Brian K. Buxton, a physician's assistant with Appalachian Orthopedics, found that the MRI "notes full thickness tear of the rotator cuff with retraction and proximal migration of the humeral head appreciated." In a letter dated April 30, 2010, Buxton wrote that the MRI "notes significant tear that does appear acute in nature of the rotator cuff of the left shoulder." Kistler was never examined by Dr. T. Lisle Whitman, an orthopedic surgeon with that practice. Dr. Whitman, however, reviewed Buxton's notes.

Kistler testified that he was not aware of any rule prohibiting him from stacking the plates without using the turntable. He said he stacked the plates in the same way, "off and on," for two and a half years. He stated that the plant manager, plant supervisor, immediate supervisor, and the

lead man had observed him stacking plates in the same way that he stacked them on the day of the accident, and none of these individuals said anything to him about performing the job differently. He was never disciplined for the way he stacked the plates. Kistler testified that he stacked the plates "the same way everybody else did it."

A number of witnesses testified on behalf of the employer. These witnesses stated that employees were required to use the turntable regardless of the size of plates because use of the turntable was a safety measure. All witnesses agreed that there is no written policy with respect to using the turntable and that no employee had ever been disciplined for stacking plates without using the turntable. Witnesses for the employer testified that employees who were stacking plates improperly would have been disciplined or cautioned and asked why they were not using the turntable. According to this testimony, some employees had been "counseled" for incorrectly stacking the plates. Miles Belcher, the employee who trained Kistler, candidly noted, however, that he "probably . . . [had] at one time" seen Kistler stacking a pallet incorrectly. The quality control manager and safety director of the plant testified that he spoke with Kistler about the incident and Kistler stated he was aware that he had to use the turntable to stack the plates.

The deputy commissioner concluded that the claimant had experienced an accident that arose out of and occurred during the course of employment. The deputy commissioner also rejected the argument that the claimant engaged in willful misconduct by violating a safety rule. In reviewing the medical evidence, the deputy commissioner found that Kistler had not sustained his burden of proving a causal connection between the condition and the work accident and, therefore, denied benefits.

In a unanimous opinion, the commission reversed the denial of benefits. The commission carefully reviewed the medical evidence and concluded that the claimant had established a

compensable injury. The commission affirmed the deputy commissioner's opinion in all other respects. This appeal followed.

ANALYSIS

On appeal, we view the "evidence and all reasonable inferences that may be drawn from that evidence" in the light most favorable to the party prevailing before the commission. Artis v. Ottenberg's Bakers, Inc., 45 Va. App. 72, 83, 608 S.E.2d 512, 517 (2005) (en banc).

I. THE EVIDENCE SUPPORTS THE COMMISSION'S CONCLUSION
THAT THE CLAIMANT SUFFERED A COMPENSABLE INJURY.

Under settled law, the claimant must shoulder "the burden of proving, by a preponderance of the evidence, (1) an 'injury by accident' . . . , (2) arising out of, and (3) in the course of, the employment." Morris v. Morris, 238 Va. 578, 584, 385 S.E.2d 858, 862 (1989). Only the first of these three elements is at issue in this appeal.

"The probative weight to be accorded [medical] evidence is for the Commission to decide; and if it is in conflict with other medical evidence, the Commission is free to adopt that view 'which is most consistent with reason and justice.'" Georgia-Pacific Corp. v. Robinson, 32 Va. App. 1, 5, 526 S.E.2d 267, 269 (2000) (citation omitted). "'Medical evidence is not necessarily conclusive, but is subject to the commission's consideration and weighing.'" Dollar Gen. Store v. Cridlin, 22 Va. App. 171, 176, 468 S.E.2d 152, 154 (1996) (citation omitted). This Court has noted that "[i]n appropriate circumstances, awards may be made when medical evidence on these matters is inconclusive, indecisive, fragmentary, inconsistent, or even nonexistent." Id. at 177, 468 S.E.2d at 154-55 (citation omitted).

To begin with, Dr. Goss's diagnosis was not, as the employer claims, "definitive." Employer's Br. at 12. Although Dr. Goss tentatively stated that the injury to the left rotator cuff "appears to be a chronic injury and not acute injury," he referred the claimant to a surgeon to specifically answer the question of whether the injury was acute or chronic. Furthermore, Dr. Goss

- 4 -

found a "tear of [Kistler's] biceps tendon." Buxton's reading of the MRI was that it showed a "full thickness tear of the rotator cuff" and a "significant tear that does appear acute in nature of the rotator cuff of the left shoulder." He further noted that the MRI findings were "consisten[t] with history provided by the patient and mechanism of injury." The history provided by the claimant was of a sudden excruciating pain, as if something had "popped" or "snapped" in his shoulder. The claimant denied having previous problems with his shoulder. Buxton's opinion, combined with the claimant's consistent description of the accident, supports the conclusion reached by the commission.

The employer relies principally on Roberts v. Southern Auger Co., No. 200-53-08 (Va. Workers' Comp. Comm'n Apr. 23, 2001). The facts of that case differ markedly from the facts here. In Roberts, the commission was skeptical of the claimant's account of a work-related injury, given his delay in reporting the accident, a report of the accident by a co-worker that was at odds with the claimant's theory, evidence suggesting a motive to fabricate the claim, and the paucity of medical evidence. In Roberts, the commission denied benefits on the basis that the claimant had failed to establish a causal connection between his disability and the accident. In the case at bar, the claimant immediately reported the accident and sought treatment, and his description of the accident is consistent with Buxton's reading of the medical evidence. Unlike Roberts, the commission in this case found the evidence of a work-related injury sufficient. Roberts is simply inapposite.

Ordinarily, the persuasive weight of all the evidence rests with the factfinder. We find no basis to depart from that principle here.

II. THE COMMISSION COMMITTED NO ERROR IN REJECTING THE EMPLOYER'S CLAIM THAT THE CLAIMANT IGNORED AN "EXPRESS ORDER" AND THAT HIS ACTIONS WERE "MORE THAN NEGLIGENCE."

Under the Virginia Workers' Compensation Act, Code § 65.2-306(A),

> [n]o compensation shall be awarded to [an] employee . . . for an injury caused by:
>
> 1. The employee's willful misconduct or intentional self-inflicted injury;
>
>         *      *      *      *      *      *      *
>
> 5. The employee's willful breach of any reasonable rule or regulation adopted by the employer and brought, prior to the accident, to the knowledge of the employee.

Applying this Code provision, we have held that

> [t]o prevail upon a defense of willful misconduct . . . , [employer] had to establish (1) that the safety rule was reasonable, (2) that the rule was known to [the employee], (3) that the rule was for [the employee's] benefit, and (4) that [the employee] intentionally undertook the forbidden act.

Spruill v. C.W. Wright Constr. Co., 8 Va. App. 330, 334, 381 S.E.2d 359, 360-61 (1989). Furthermore, "[d]isregard of an express order, especially one made for the safety of the employees, usually constitutes willful misconduct." Uninsured Employer's Fund v. Keppel, 1 Va. App. 162, 165, 335 S.E.2d 851, 852 (1985). "[T]he employee may rebut the defense by showing that the rule was not kept alive by bona fide enforcement or that there was a valid reason for his inability to obey the rule." Buzzo v. Woolridge Trucking, Inc., 17 Va. App. 327, 332, 437 S.E.2d 205, 208 (1993). In addition, proof of negligence, including gross negligence, will not support the defense. Spruill, 8 Va. App. at 334, 381 S.E.2d at 361.

The testimony offered by the parties with respect to the training and use of the turntable was in conflict. The deputy commissioner rejected the testimony offered by the employer "after personally observing each of the witnesses" and found the claimant's account persuasive. The deputy commissioner also found that if such a rule existed, the employer did not enforce it. The

commission affirmed, likewise concluding that the employer's unwritten, never enforced "rule" did not constitute an "express order." The evidence, particularly in light of the standard of review, fully supports the commission's conclusion that the employer's training and supervision with regard to the use of the turntable did not constitute a "safety rule." By the same token, the facts do not show the existence of an "express order."

The facts of this case contrast with situations where an employee was barred from receiving benefits based on the employee's willful flouting of a safety rule. For example, the Supreme Court of Virginia, in Mills v. Va. Elec. & Power Co., 197 Va. 547, 90 S.E.2d 124 (1955), noted that the employee manual specifically ordered employees to wear rubber gloves when working on equipment carrying certain levels of voltage. Id. at 549, 90 S.E.2d at 125. The claimant, despite being well aware of this prohibition, ignored this rule and was gravely injured. The Court held that his willful misconduct precluded compensation under the Act. Id. at 552-53, 90 S.E.2d at 127.

We also uphold the commission's conclusion that the claimant's act of stacking plates directly onto the pallet rather than on the turntable constitutes, at most, negligence rather than a willful act. A willful act "'imports something more than a mere exercise of the will in doing the act. It imports a wrongful intention.'" Keppel, 1 Va. App. at 164, 335 S.E.2d at 852 (citation omitted). The claimant testified that he always had stacked plates in this manner and that others did the same. The evidence does not establish any wrongful intention by the claimant.

The case cited by the employer is distinguishable. See Boysaw v. Hercules, 21 Va. App. 458, 465 S.E.2d 135 (1995) (employees' death not compensable under the Act because employees violated a strictly enforced policy, embodied in a memorandum, which prohibited entry of a dangerous area without a permit to enter the area). We likewise find the prior decisions of the commission, which are cited to us as persuasive authority, to be distinguishable. See Perez v. Blaunch Bros., Inc., No. 178-40-71 (Va. Workers' Comp. Comm'n Feb. 19, 1997)

(claimant's accident was not compensable because, while thirty feet in the air, he walked out on the rails of a manlift in contravention of express instructions not to climb on the rails); Melendez v. Smetana, No. 157-05-92 (Va. Workers' Comp. Comm'n Nov. 30, 1993) (accident not compensable when employee deliberately did not use guard on a saw after having been twice instructed to do so).  Each of these cases involved a safety rule that was conveyed to the employee, an obvious grave danger to the employee should the employee fail to follow the rule, and proof of enforcement by the employer.  Viewing the evidence in the light most favorable to the prevailing party, the employer's turntable training does not embody any of these features.

Credible evidence supports the holding of the commission that the claimant did not breach a "safety rule" or an "express order" and, further, that claimant's actions were not willful.  We will, therefore, uphold the decision of the commission.

CONCLUSION

We affirm the commission's decision that the claimant sustained an injury, that no express order was given to the claimant with respect to use of the turntable, and that he did not willfully violate a safety rule.

Affirmed.