COURT OF APPEALS OF VIRGINIA


Present:    Judges Elder, Frank and Haley
Argued by teleconference


AMERICAN ZURICH INSURANCE COMPANY

MEMORANDUM OPINION* BY
v.        Record No. 2748-07-1        JUDGE LARRY G. ELDER
MARCH 31, 2009

PETER BRIAN AMUNDSEN,
  BANCROFT GRANITE & MARBLE, LLC AND
  UNINSURED EMPLOYER'S FUND


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        Gerard E. W. Voyer (Charlotte A. Dauphin; Taylor & Walker, P.C.,
        on briefs), for appellant.

        David B. Oakley (Huff, Poole & Mahoney, P.C., on brief), for
        appellee Uninsured Employer's Fund.

        No brief or argument for appellees Peter Brian Amundsen or
        Bancroft Granite & Marble, LLC.


        American Zurich Insurance Company (the carrier) appeals from a decision of the

Workers' Compensation Commission (the commission) holding Bancroft Granite & Marble,

LLC (the employer) liable to pay medical benefits for Peter Brian Amundsen (claimant) related

to the hernia injury he sustained on April 3, 2006.  On appeal, the carrier, joined by the

Uninsured Employer's Fund (the fund), contends the commission erroneously held the employer

responsible for benefits, based on its conclusion that claimant did not engage in willful

misconduct.  The carrier also contends the commission erred in holding it, rather than the fund,

was responsible for claimant's benefits.  We hold credible evidence supported the commission's

finding that claimant did not willfully violate a known safety rule.  However, based on the

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Supreme Court's holding in <u>Travelers Property Casualty Co. v. Ely</u>, 276 Va. 339, 666 S.E.2d 523 (2008), we hold the commission erred in concluding the carrier was responsible for those benefits and, instead, that the fund is responsible. Thus, we affirm in part, reverse in part, and remand to the commission for entry of an award consistent with this opinion.

I.

BACKGROUND

The evidence, viewed in the light most favorable to claimant, <u>see, e.g.</u>, <u>Crisp v. Brown's Tysons Corner Dodge, Inc.</u>, 1 Va. App. 503, 504, 339 S.E.2d 916, 916 (1986), established the following:

Claimant worked for the employer, a granite fabrication business, under the supervision of owner Jimmy Bancroft. Claimant's duties in the employer's shop included routing and polishing granite edges, cutting sink holes, and moving the various granite slabs on which he was working as needed to perform his job. Also working in the shop was Jimmy Bancroft's son, Joseph Bancroft, who was responsible for "run[ning] the cutting table to saw the granite." Jimmy Bancroft was sometimes in the shop and sometimes performing duties elsewhere. The employer owned a "boom" forklift that was used in the shop to pick the granite "up on end," and sometime shortly before April 3, 2006, the employer had "just gotten" a different kind of forklift that used suction to pick up the granite.

On April 3, 2006, claimant was working on a piece of granite on one of the tables in the shop and needed to stand it on its end so the forklift could pick it up. Claimant asked Joe Bancroft to hold the table steady, and claimant squatted down beneath the granite and grabbed onto it. When claimant pushed up on the granite slab, he sustained a hernia and later underwent surgery to repair it. Claimant said the granite slab was "[p]robably about six by six" or "eight by seven" and was "pretty heavy," weighing 200 pounds or more.

When claimant filed a claim for medical benefits, the employer averred the claim was barred because claimant willfully violated a known safety rule designed to prevent the injury he sustained. The carrier also alleged it did not provide coverage to the employer on the date of claimant's injury because the policy had lapsed based on the employer's failure to pay its premium, whereas the fund contended the carrier remained liable because it failed to notify the commission pursuant to Code § 65.2-804 of the nonrenewal of the employer's policy.

At the hearing before the deputy commissioner, claimant testified that he picked up heavy things at his job for employer "[e]very day" "pretty much all day long." He knew employer had two different types of equipment, both forklifts, for use in moving around heavy pieces of granite, but he testified that this special equipment "was more for . . . if you're moving like half a slab around or something like that." He testified "[i]t wasn't anything out of the ordinary for what I was doing to pick a piece of granite up [by hand] and whatever we were doing, moving it around." He insisted he "[was not] told that [he] had to" use either the "boom" forklift or the "suction cup" forklift every time he needed to move a piece of granite.

Jimmy Bancroft testified, claiming the granite slab claimant was lifting at the time of his injury would, based on its size, have weighed approximately 800 to 1,000 pounds. He also testified the suction cup forklift was about two months old and that he had instructed claimant on how to use it. He testified that when he was in the shop and "kn[e]w [the device] need[ed] to be used," he "enforce[d] the use of the equipment." He also admitted, however, that "*[u]sually* if [he is in the shop he] tr[ies] to enforce getting the lift out and using it . . . for the sake of the material and the guys[, but that] there might have been a few times where we might not have. If it's not such a large piece, we might not use it. If it's under 3 or 400 pounds." (Emphasis added). He said he had told claimant to use the lift as much as possible and that he had not told claimant when he "[did not] need to use it" because "it's pretty obvious." He could not recall

- 3 -

whether he had ever seen claimant not use the lift when he should have. Jimmy Bancroft testified he "[p]robably" had seen his son, Joe Bancroft, "not use the lift when he should have" and that he would "usually tell them they're crazy."

As to the employer's failure to pay the premium, it was undisputed that, although the carrier sent the employer a renewal quote offer on December 13, 2005, the employer did not pay that premium. The employer's policy with the carrier lapsed on March 14, 2006, and the employer did not obtain coverage with a new insurance company until April 17, 2006, after claimant's injury. It was also undisputed that the carrier did not file a commission form 45H notifying the commission that it no longer provided workers' compensation insurance to the employer.

The deputy commissioner awarded benefits and, based on the *en banc* decision of the Court of Appeals in Travelers Property Casualty Co. v. Ely, 49 Va. App. 807, 645 S.E.2d 342 (2007), held the carrier responsible for paying them. On review, the commission affirmed the deputy's decision, ruling as follows:

> Regarding the willful misconduct claim, we find that the employer had a safety rule, that the claimant knew of the rule and the rule was for his benefit, but we find that the claimant did not intentionally violate the rule because it was not obvious when the claimant should use the forklifts and when he was not required to use the forklifts. Under these circumstances, we find that the claimant did not engage in willful misconduct.
> We find that under Virginia Code § 65.2-805 the insurer in this case was required to notify the Commission of the non-renewal of the employer's policy. It did not notify the Commission. Its policy, therefore, was not effectively terminated. Accordingly, the insurer is responsible for benefits for the claimant's compensable injury by accident.

On November 16, 2007, the carrier noted an appeal of the commission's decision, and on September 12, 2008, while that appeal was pending, the Supreme Court reversed the Court of Appeals' decision approving the commission's ruling. See Ely, 276 Va. 339, 666 S.E.2d 523.

- 4 -

II.

ANALYSIS

A.

WILLFUL MISCONDUCT AND CLAIMANT'S ENTITLEMENT TO BENEFITS

Pursuant to Code § 65.2-306 of the Workers' Compensation Act,

> No compensation shall be awarded to [an] employee . . . for an injury . . . caused by:
>
> > 1. The employee's willful misconduct or intentional self-inflicted injury;
>
> > \*     \*     \*     \*     \*     \*     \*
>
> > 4. The employee's willful failure or refusal to use a safety appliance or perform a duty required by statute; [or]
> > 5. The employee's willful breach of any reasonable rule or regulation adopted by the employer and brought, prior to the accident, to the knowledge of the employee . . . .

Code § 65.2-306(A). That code section also provides that "[t]he person or entity asserting any of the[se] defenses . . . shall have the burden of proof." Code § 65.2-306(B). Here, the carrier notified the commission of its intent to rely on the defenses set out in subsections (A)(4) and (5) and, thus, bore the burden of proving that one of these defenses applied.

To successfully raise a defense of willful misconduct under this statute, the employer must establish "(1) that the safety rule [or other duty] was reasonable, (2) that the rule was known to [the employee], (3) that the rule was for [the employee's] benefit, and (4) that [the employee] intentionally undertook the forbidden act." Spruill v. C.W. Wright Constr. Co., 8 Va. App. 330, 334, 381 S.E.2d 359, 360-61 (1989). "[T]he employee may rebut the defense by showing that the rule was not kept alive by bona fide enforcement or that there was a valid reason for his inability to obey the rule." Buzzo v. Woolridge Trucking, Inc., 17 Va. App. 327, 332, 437 S.E.2d 205, 208 (1993). Also, proof of negligence, even gross negligence, will not

- 5 -

support the defense. Spruill, 8 Va. App. at 334, 381 S.E.2d at 361. Our review of the commission's determination regarding whether an employer has proved the defense of willful misconduct is a mixed question of fact and law. Buzzo, 17 Va. App. at 333, 437 S.E.2d at 209. Thus, we view the evidence in the light most favorable to the claimant, and we defer to the factual components of the commission's ruling if credible evidence in the record supports them. Id.

The evidence, so viewed, supported the commission's finding that a reasonable safety rule existed for claimant's benefit and that claimant knew of the existence of the rule but that "claimant did not intentionally violate the rule because it was not obvious when the claimant should use the forklifts and when he was not required to use the forklifts." It was undisputed that the employer had "just gotten" the suction cup forklift shortly before claimant's injury. Claimant testified he was aware of the availability of both forklifts for use in the employer's shop but said these devices were "more for . . . if you're moving like half a slab around or something like that" and that he "[was not] told that [he] had to" use either the "boom" forklift or the "suction cup" forklift every time he needed to move a piece of granite. Claimant explained that he picked up heavy things at his job for the employer "[e]very day" "pretty much all day long" and that "[i]t wasn't anything out of the ordinary for what [he] was doing to pick a piece of granite up [by hand] and . . . move it around." Company owner Jimmy Bancroft, who spent some of his time working in the shop with claimant, admitted "[i]f it's not such a large piece, we might not use [the forklift]. If it's under 3 or 400 pounds." Bancroft also admitted he had not given claimant any specific rules or guidelines for the circumstances under which use of a forklift was required and those under which use of a forklift was not required because "it's pretty obvious."

This evidence supported the commission's ruling that it was not, in fact, "obvious" to claimant when the rule applied and, under these circumstances, that the employer failed to meet

its burden of proving claimant's failure to use a forklift on April 3, 2006, constituted willful misconduct.

B.

COVERAGE

The commission applied our *en banc* decision in <u>Travelers Property Casualty Co. v. Ely</u>, 49 Va. App. 807, 645 S.E.2d 342 (2007) (affirming the commission's decision by operation of law based on an evenly divided court), to hold that the carrier was required to file a form 45H when the employer elected not to renew its workers' compensation insurance policy and that, based on the carrier's failure to do so prior to claimant's April 3, 2006 injury by accident, employer was still covered by the carrier on that date. Since that time, however, the Supreme Court reversed our holding in <u>Ely</u>, concluding a carrier has a statutory obligation to file a form 45H only when *the carrier* opts not to renew the insured's policy, not when *the employer* opts not to renew. <u>Travelers Property Casualty Co. v. Ely</u>, 276 Va. 339, 666 S.E.2d 523 (2008), <u>rev'g</u>, 49 Va. App. 807, 645 S.E.2d 342 (2007) (en banc).

The fund acknowledges the Supreme Court's holding in <u>Ely</u> but argues that <u>Ely</u> "was wrongly decided to the extent it found failure to pay premiums at the end of a policy's term is a non-renewal solely by the insured which does not trigger the notice requirement of Va. Code § 65.2-804(B)." Whatever our opinion of the Supreme Court's holding in <u>Ely</u>, "[w]e are bound by decisions of the Supreme Court of Virginia and are without authority to overrule [them]." <u>Roane v. Roane</u>, 12 Va. App. 989, 993, 407 S.E.2d 698, 700 (1991). Thus, we reverse the commission's decision on the coverage issue and hold the fund rather than the carrier is responsible for medical benefits for claimant's April 3, 2006 compensable injury.

The carrier avers that, because of the Supreme Court's recent decision in <u>Ely</u>, the fund's argument on this point "is not warranted by existing law" and, thus, that the carrier is entitled

under Code § 8.01-271.1 to an award of fees and expenses incurred as a result of having to reply to the fund's argument on this point. We decline the carrier's request. Code § 8.01-271.1 does not provide that a party's signature on a pleading necessarily constitutes his certification that the pleading is "warranted by existing law." His signature may instead constitute a certification that the pleading is "warranted by . . . a good faith argument for the *extension, modification, or reversal* of existing law." Code § 8.01-271.1 (emphasis added). Although the carrier states that the fund "advances no argument for the reversal of Ely," the fund spends more than four pages in its brief explaining why it believes Ely was wrongly decided. The mere recency of the Supreme Court's decision in Ely does not prevent the fund from making a good faith argument for its modification or reversal. See, e.g., Nelson v. Warden, 262 Va. 276, 552 S.E.2d 73 (2002), overruling Moore v. Commonwealth, 259 Va. 431, 527 S.E.2d 406 (2000). Although the Court of Appeals is without authority to reverse that decision, the fund must raise that argument in this Court in order to preserve it for appeal to the Supreme Court.

III.

For these reasons, we hold credible evidence supported the commission's finding that claimant did not willfully violate a known safety rule. However, we hold the commission erred in concluding the carrier was responsible for those benefits and, instead, that the fund is responsible. Thus, we affirm in part, reverse in part, and remand to the commission for entry of an award consistent with this opinion.

Affirmed in part,
reversed in part,
and remanded.