COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Beales, O'Brien and Russell
Argued by videoconference


TRUTEAM AND
  ACE AMERICAN INSURANCE COMPANY
                                                    MEMORANDUM OPINION* BY
v.        Record No. 0719-21-4                      JUDGE RANDOLPH A. BEALES
                                                    FEBRUARY 1, 2022
GLORIA C. DEQUINTANILLA


                FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Matthew J. Griffin (Lucas & Kite, PLC, on brief), for appellants.

            Richard M. Reed (The Reed Law Firm, P.L.L.C., on brief), for
            appellee.


        Truteam and its insurance provider, Ace American Insurance Company (collectively

"Truteam"), appeal the unanimous decision of the Virginia Workers' Compensation Commission

("the Commission") awarding continuing temporary total disability benefits for one of Truteam's

employees, Gloria DeQuintanilla.  DeQuintanilla was injured when she fell from an attic while

working for Truteam.  On appeal, Truteam contends that the Commission erred in finding

DeQuintanilla's injuries to be compensable even though she was not wearing a safety harness at the

time of the accident.  See Code § 65.2-306(A)(5).  In addition, Truteam argues that "[t]he

Commission erred in its rulings/finding on [DeQuintanilla's] disability and entitlement to wage loss

benefits."  Truteam also contends that the Commission erred in affirming the deputy

commissioner's denial of Truteam's motion to exclude, in affirming the deputy commissioner's

_____
        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

granting of DeQuintanilla's motion to quash, in its credibility findings, and in allegedly failing to comply with Code § 65.2-705.

## I. BACKGROUND

In July 2019, Gloria DeQuintanilla was hired by Truteam to install wall insulation. A few months later, Richard Leake, the production manager in charge of attic installation, temporarily assigned DeQuintanilla to work with Aaron Travis Harrison in installing attic insulation. DeQuintanilla worked with Harrison for approximately two and a half months preceding her accident. Her main responsibility was to load insulation material into the hopper – a machine that grinds up insulation to be blown into the attic. However, she also helped Harrison, working with him in attics on a weekly basis.

On November 25, 2019, while working for a subsidiary of Truteam, DeQuintanilla was using a foam pistol to seal wood in an attic when she fell approximately eight feet through the sheetrock to the floor below landing on her right side. She was not wearing a safety harness. Initially unable to get up, DeQuintanilla eventually managed to stand up and actually returned to work.

Later that day, DeQuintanilla went to the hospital. She complained of "throbbing pain to [her] head, neck, back and right hip." An examination and tests revealed that she fractured her lumbar vertebrae and a rib on her right side. She also suffered a head injury and multiple contusions. The hospital released DeQuintanilla the same day with a note stating that she "[m]ust be cleared by MD before returning to work."

On December 18, 2019, DeQuintanilla filed a claim with the Commission for injuries to her right hip, right ribs, stomach, back, right leg, and right wrist, and for a concussion. DeQuintanilla claimed that she sustained these injuries when she "tripped and fell through [the] ceiling onto [the] floor below." She sought ongoing temporary total disability benefits, medical benefits, and

payment of medical bills and prescriptions. In December 2019, DeQuintanilla began seeing Dr. Ashok Gowda for the injuries she sustained from her fall. She saw him periodically for follow-up appointments. Dr. Gowda's records reflect that DeQuintanilla consistently complained of pain in her lower back and frequently complained of numbness in her lower extremities. Furthermore, Dr. Gowda reported that basic activities aggravated the pain (*e.g.*, walking, sitting, standing, bending, etc.) and found her unable to work after each visit. Dr. Gowda's records from November 3, 2020 reflect that DeQuintanilla suffered from "[b]ack pain [that] radiates to the right hip and right lower extremity" and "[s]tanding, floor exercises, walking, and climbing stairs aggravates the pain." He determined that she was "unable to work due to pain" and listed diagnoses of "Cervical & Lumbar Radiculopathy, Vertebral: Rib Fracture." Furthermore, he noted that he wanted to follow up with DeQuintanilla in four weeks.

A hearing before the deputy commissioner was held on November 20, 2020. At the time of the hearing, DeQuintanilla had amended her claimed injuries to include cervical sprain, chest, lumbar sprain, L1 through L5 vertebrae fractures, and both ankles. At the hearing, DeQuintanilla testified through a translator because she does not speak English. She testified before the deputy commissioner that she continues to suffer from dizziness, headaches, photosensitivity, and pain in her lumbar spine, feet, ankles, and right pelvis area. She also testified that Dr. Gowda had not yet released her to work and that she had not worked at all since the accident.

At the hearing, Truteam argued that DeQuintanilla's injuries resulted from her willful violation of a known safety rule and, therefore, were not compensable. The parties agree that Truteam had a rule requiring employees to wear a safety harness "if exposed to a fall of 6 feet" or more. At the time of the accident, DeQuintanilla was exposed to a fall of approximately eight feet.

Sorbellio Villalta Cruz, a representative for Truteam, testified that Truteam had regular safety meetings at which protection from falls was discussed. He testified that he often translated

those safety meetings when he was there and could recall one meeting that he attended during which the safety harness requirement was discussed. Although DeQuintanilla recalled having attended two safety trainings about protection from falls, including the one Cruz recalled attending, she testified that Truteam only showed employees how to properly secure ladders at those meetings and never trained her on the use of a safety harness. Furthermore, she testified that she was never given a safety harness.

When asked how the safety policies were enforced, Leake testified that Truteam enforced its safety harness policy by job site inspections. However, when Harrison was asked whether job site inspections were usual, he responded, "It varies during the weeks." There was also testimony that Leake never showed up when DeQuintanilla was actually working in the attic during the two and a half months she worked with Harrison.

Leake testified that Harrison was the "lead man" on the job site where DeQuintanilla worked. According to Leake, the "lead man" has control over the day-to-day activities on the job site in Leake's absence and also has the responsibility to ensure that the job site is safe. Leake testified that if the job site was not safe and management could not be reached, Harrison had the authority to shut down the job site until it was made safe. Furthermore, Harrison testified that, when it was just he and DeQuintanilla on the job site, he was the one who decided what work to do and how to do it.

Harrison knew that Truteam required employees to wear a safety harness when exposed to certain heights. Nevertheless, he testified that, in the two and a half months he and DeQuintanilla had worked together, he had "never seen her [DeQuintanilla] with one [a safety harness] on." Furthermore, Harrison testified that he did not always wear a safety harness himself. DeQuintanilla testified that she never saw Harrison wearing a safety harness while in the attic during the two and a

half months they worked together. Harrison also testified that neither of them was wearing a safety harness on the day of the accident.

At the beginning of the hearing, both DeQuintanilla and Truteam exchanged their medical designations, which the deputy commissioner then admitted into the record. Neither party objected to the medical designations at that time. Just prior to commencing with testimony, the deputy commissioner asked whether either party wanted to address any further preliminary matters. Counsel for Truteam and counsel for DeQuintanilla both declined. However, after all but one witness had testified, Truteam made a motion to exclude several of DeQuintanilla's medical records on the grounds that they were not timely produced or given to Truteam.[1] The deputy commissioner denied the motion to exclude, explaining that Truteam failed to timely make its motion (waiting until the hearing had nearly concluded) and that "the Commission rarely excludes medical evidence" in matters before it. Although he denied the motion to exclude, the deputy commissioner gave Truteam seven days to inform him whether Truteam wanted to submit any rebuttal evidence or to cross-examine witnesses. Three days later, Truteam informed the deputy commissioner that it had decided not to avail itself of any of the options that the deputy commissioner had offered and instead insisted that "the only remedy is exclusion of the evidence at issue." Truteam also stated that "it would then appear appropriate to close the record and proceed to issuance of the Opinion in this matter."

On November 30, 2020, ten days after the hearing, the deputy commissioner closed the evidentiary record. That same day Truteam mailed interrogatories to DeQuintanilla seeking information on whether DeQuintanilla had produced and submitted her medical records in compliance with Rule 4.2 of the Commission. DeQuintanilla filed a motion to quash discovery,

---

[1] Truteam ultimately sought to exclude approximately 60% of DeQuintanilla's medical records.

which the deputy commissioner granted, given that he had already offered Truteam several remedies due to DeQuintanilla's untimely submission of some of her medical records.

The deputy commissioner issued an opinion on December 10, 2020, in which he found some of DeQuintanilla's injuries compensable. Although DeQuintanilla was not wearing a safety harness at the time of her accident, the deputy commissioner found that Truteam did not make a *bona fide* effort to enforce its rule requiring use of the safety harness. The deputy commissioner entered an award for temporary total disability benefits from November 25, 2019 and for the cost of medical treatment causally related to her compensable injuries: "concussion, right posterior ninth rib fracture, chest contusion and transverse process fractures of the lumbar vertebrae at L1-5." However, he denied the rest of DeQuintanilla's claims.

Truteam then filed an appeal with the full Commission. After a review of the entire record, the full Commission issued an opinion on June 15, 2021, unanimously affirming the deputy commissioner. First, the full Commission "agree[d] with the Deputy Commissioner that the employer's safety rule was not kept alive by bona fide enforcement." The full Commission noted that DeQuintanilla "never wore a safety harness in an attic during the two and a half months she worked" with Harrison. The full Commission also emphasized that Harrison – who was the lead man on the job site – only sometimes wore a safety harness and that he was also not wearing a harness at the time of the accident.

Second, the full Commission found that the deputy commissioner was not obligated to exclude DeQuintanilla's medical records simply because they were produced late, and further found that the motion to exclude was not timely made. The full Commission stated that even though the deputy commissioner declined to exclude DeQuintanilla's medical records, he "offered the defendants seven days to decide whether to offer post-hearing evidence," but Truteam "elected not to do so, cognizant of the potential consequences." Consequently, the full Commission ruled that

"[t]he Deputy Commissioner acted within his sound discretion to craft a remedy fair to all parties," and affirmed the deputy commissioner's decision.

Third, the full Commission held that the deputy commissioner did not abuse his discretion in granting the motion to quash Truteam's interrogatories because the discovery requests were no longer relevant to issues pending before the Commission. The interrogatories were not necessary given that the deputy commissioner had ruled that DeQuintanilla's medical records were produced late and had already afforded Truteam an opportunity to seek post-hearing relief as a remedy.

Fourth, the full Commission found that there was no need for an adverse credibility determination simply because it found some, but not all, of DeQuintanilla's injuries compensable. Specifically, it found, "The denial of some of the claimed injuries did not require an adverse credibility finding" or "necessitate discrediting the entirety of her testimony."

Finally, the full Commission found the evidence sufficient to show an ongoing temporary total disability because the medical records indicated that DeQuintanilla suffered fractures of her vertebrae from her fall and because her pain and ongoing disability were related to the vertebrae fractures that she sustained.

Truteam filed a motion for reconsideration, which the Commission denied. Truteam now appeals to this Court.

## II. ANALYSIS

### A. Standard of Review

On appeal, appellants bear "the 'burden of showing' that the Commission committed 'reversible error.'" *Jones v. Crothall Laundry*, 69 Va. App. 767, 774 (2019). "[T]he full [C]ommission is the factfinder for [C]ommission proceedings." *Meidan, Inc. v. Leavell*, 62 Va. App. 436, 442 (2013); *see* Code § 65.2-201. As such, "the Commission's factual findings are 'conclusive and binding' if 'supported by credible evidence.'" *Jones*, 69 Va. App. at 774 (quoting

- 7 -

*Layne v. Crist Elec. Contractor, Inc.*, 64 Va. App. 342, 350 (2015)). This is true "even [if] there is evidence in the record to support a contrary finding." *Id.* (alteration in original) (quoting *City of Waynesboro v. Griffin*, 51 Va. App. 308, 317 (2008)). On appeal, this Court "simply does not 'retry the facts, reweigh . . . the evidence, or make [its] own determination of the credibility of the witnesses.'" *Id.* (alteration in original) (quoting *Layne*, 64 Va. App. at 345). Such deference to the Commission, however, does not extend to questions of law, which this Court reviews *de novo*. *Rusty's Welding Service, Inc. v. Gibson*, 29 Va. App. 119, 127 (1999) (*en banc*).

"When a challenge is made to the [C]ommission's construction of its rules, our review is limited to a determination of whether the [C]ommission's interpretation of its own rule was reasonable. We will not set aside the [C]ommission's interpretation of its rules unless that interpretation is arbitrary and capricious." *Diaz v. Wilderness Resort Ass'n*, 56 Va. App. 104, 114 (2010) (quoting *Boyd v. People, Inc.*, 43 Va. App. 82, 86-87 (2004)).

### B. Willful Breach of a Workplace Safety Rule

In Truteam's first assignment of error, it argues that "[t]he Commission erred in its rulings/findings on whether the claim is barred by Virginia Code § 65.2-306 based on willful misconduct and violation of a safety rule."[2] Specifically, at issue in this appeal is whether Truteam made a *bona fide* effort to enforce its safety harness rule such that DeQuintanilla's claim is barred under Code § 65.2-306(A)(5).

A claimant is prohibited by statute from being awarded compensation when their workplace injury was caused by "[t]he employee's willful breach of any reasonable rule or regulation adopted by the employer and brought, prior to the accident, to the knowledge of the employee." Code

---

[2] Although Truteam refers both to willful misconduct (Code § 65.2-306(A)(1)) and to willful violation of a safety rule (Code § 65.2-306(A)(5)) in its assignment of error, the Commission's decision in this case rested on DeQuintanilla's violation of a reasonable safety rule. Therefore, we address this assignment of error under Code § 65.2-306(A)(5) only.

§ 65.2-306(A)(5).  However, an "employee may rebut the defense by showing that the rule was not kept alive by bona fide enforcement." *Gwaltney of Smithfield, Ltd. v. Hagins*, 32 Va. App. 386, 393 (2000) (quoting *Buzzo v. Woolridge Trucking, Inc.*, 17 Va. App. 327, 332 (1993)).  "Whether the evidence was sufficient to demonstrate that the safety rule was not strictly enforced is a mixed question of law and fact[.]"  *Id.* (citing *Virginia Electric & Power Co. v. Kremposky*, 227 Va. 265, 270 (1984)).

As the Supreme Court of Virginia has stated, "[t]he statutory defense of wilful disobedience of safety rules or wilful failure to use a safety device will succeed only . . . if the rule is kept alive by Bona fide enforcement."  *Peanut City Iron & Metal Co. v. Jenkins*, 207 Va. 399, 404 (1966) (quoting Larson, Workmen's Compensation Law, Vol. 1, s 33.00, p. 480); *see also Buzzo*, 17 Va. App. at 332.  Thus, "[a]t the heart of the matter" is whether Truteam made "'a conscientious, *bona fide* effort . . . to require claimant and the other employees to fully comply with the rule at all times.'"  *Mouhssine v. Crystal City Laundry*, 62 Va. App. 65, 76 (2013) (quoting *Jenkins*, 207 Va. at 406).

"Proof of a pattern or practice of failing to discipline employees guilty of willful violations of a safety rule defeats the defense afforded an employer by Code § 65.1-38, but only when such violations occur 'under circumstances charging the employer with knowledge and acquiescence.'"  *Kremposky*, 227 Va. at 270-71 (quoting *Jenkins*, 207 Va. at 404).  An employer is charged with knowledge and acquiescence when "someone in a supervisory capacity representing the employer was aware that the safety rule was being violated."  *Mouhssine*, 62 Va. App. at 81; *see also Hagins*, 32 Va. App. at 394 (agreeing with the Commission that "someone in a supervisory capacity representing the employer was aware that the safety rule was being violated" where Hagins's crew leader "was responsible for her training" and "was also responsible for enforcing the safety rules").

There was testimony that Leake – the Truteam production manager who is in charge of numerous Truteam job sites – was never at the job sites in question in this case at any of the times that DeQuintanilla was working in the attic. In his absence, he relied on the "lead man" at each job site to control day-to-day activities and to ensure that the job site was safe. In this case, Harrison – the lead man – had control over what DeQuintanilla did and how she did it on the job site.[3] Harrison never saw DeQuintanilla wear a safety harness while in the attic at any point during the two and a half months they worked together. Despite being responsible for job site safety, the record does not reflect that Harrison ever reported DeQuintanilla's failure to wear a safety harness to management, ever shut down the job site until she put her safety harness on, ever informed her that she needed to wear a safety harness, or ever showed her how to put on a safety harness. Furthermore, Harrison himself only sometimes wore his harness even though he knew the rule and the purported potential consequences for not wearing it. In addition, none of the witnesses who testified before the deputy commissioner could recall any instance of an employee being punished for failure to wear a safety harness prior to DeQuintanilla's fall. All of these facts demonstrate that at least one person with supervisory capacity knew of DeQuintanilla's failure to wear a safety harness for two and a half months and made no *bona fide* effort to enforce the safety harness rule on the job sites at which DeQuintanilla worked. Therefore, we hold that the Commission did not err in concluding that DeQuintanilla's claim was not barred by Code § 65.2-306(A) because Truteam failed actually to keep the safety harness rule alive by *bona fide* enforcement.

---

[3] Truteam contends that the Commission erred in finding that Harrison was DeQuintanilla's "lead man." However, credible evidence in the record shows that the production manager identified Harrison as the "lead man" at DeQuintanilla's job site who had control over day-to-day activities. Furthermore, Harrison testified that, between himself and DeQuintanilla, he was the one who decided what to do and how to do it. Thus, it is a reasonable inference that DeQuintanilla was subject to Harrison's direction. Therefore, the Commission did not err in finding Harrison to be the "lead man" at the job site where DeQuintanilla was working.

- 10 -

## C.  Motion to Exclude

In Truteam's second assignment of error, it contends that the Commission erred in denying Truteam's motion to exclude DeQuintanilla's medical records.  Specifically, Truteam argues that "[t]he Commission's 'interpretation' of Rule 4.2 and refusal to apply and enforce its own rule was unreasonable, arbitrary and capricious, and constitutes an abuse of discretion and denial of due process."

Rule 4.2 of the Commission provides, "Each party shall promptly provide the other parties with copies of any medical records they receive as they receive them," and directs the parties to "file with the Commission only medical records that are related to the hearing request" to "be filed upon receipt by the party filing them."  In its opinion, the Commission acknowledged that DeQuintanilla had not "produced [her medical records] in discovery or filed [them] pursuant to Rule 4.2."  In relevant part, Rule 1.12 of the Commission provides, "In addition to the statutory authority of the Commission to levy fines, to assess attorney fees and punish contempt, the Commission *may* enforce its rules and the provisions of the Workers' Compensation Act . . . by . . . exclusion of evidence from the record." (Emphasis added).  The use of the phrase "may enforce its rules" supports the conclusion that the Commission is not obligated to exclude evidence from the record when its rules are violated.  The plain language of Rule 1.12 gives the Commission discretion over what, if any, sanction the Commission gives for the violation of one of its rules.  *See Jeff Coal, Inc. v. Phillips*, 16 Va. App. 271, 278 (1993).

Here, Truteam did not make its motion to exclude until the hearing before the deputy commissioner had almost concluded despite the fact that the parties had exchanged medical designations at the beginning of the hearing.  Therefore, the full Commission found in its opinion that Truteam "failed to make a timely objection to medical records which had not been produced in discovery or filed pursuant to Rule 4.2."

Given that Truteam failed to timely make its motion, waiting until almost all testimony had been taken and the hearing nearly concluded, the deputy commissioner denied Truteam's motion. Nonetheless, the deputy commissioner offered Truteam other remedies, including the opportunity to cross-examine witnesses or offer rebuttal evidence. The deputy commissioner gave Truteam seven days to notify him of the remedy it was selecting, but Truteam refused to avail itself of any of the options afforded Truteam by the deputy commissioner, who acted well within his discretion in offering Truteam these alternative remedies instead of imposing the rather drastic sanction of excluding the bulk of DeQuintanilla's medical records. Therefore, we cannot say that the Commission erred here or abused its discretion by upholding the deputy commissioner on this point.

## D. Motion to Quash

In Truteam's third assignment of error, it states, "The Commission erred in its rulings/finding granting/affirming the quashing of the defendants' [Truteam's] Interrogatories and Requests for Production of Documents." Truteam further argues that the Commission "erred in finding/stating that the requests were no longer relevant to the issues before the Commission."

Rule 1.8(A) of the Commission provides that the scope of discovery in matters before the Commission "shall extend only to matters which are relevant to issues pending before the Commission and which are not privileged."

Truteam's interrogatories sought to discover whether DeQuintanilla had timely produced and submitted her medical records. However, the deputy commissioner had already denied Truteam's motion to exclude DeQuintanilla's medical records for failure to timely produce them, and the deputy commissioner had done so under the presumption "that the medical records in question had not been produced in advance of the hearing." In other words, the deputy commissioner had already ruled on that issue and had already afforded "the defendants [Truteam] the opportunity to seek post-hearing relief" due to DeQuintanilla's late filing of her medical records.

- 12 -

Therefore, we cannot say that the Commission erred in finding that the issue of whether DeQuintanilla had timely filed and produced her medical records was no longer an issue pending before the Commission. Consequently, the Commission did not abuse its discretion in affirming the deputy commissioner's decision to quash certain interrogatories from Truteam seeking discovery. *See* Commission Rule 1.8(A).

### E. Ongoing Temporary Total Disability

In Truteam's fourth assignment of error, it argues that the evidence before the Commission was insufficient to support a finding of ongoing "disability and entitlement to wage loss benefits" related to the compensable injuries sustained by DeQuintanilla during her fall.

When a party seeks workers' compensation benefits, "[the] party seeking compensation bears the burden of proving his disability and the periods of that disability." *Marshall Erdman & Associates, Inc. v. Loehr*, 24 Va. App. 670, 679 (1997). "Whether [a claimant] suffered a continuing disability is also a question of fact" which will not be disturbed on appeal if supported by credible evidence in the record. *Hoffman v. Carter*, 50 Va. App. 199, 216 (2007); *see Jones*, 69 Va. App. at 774. "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." *Wagner Enterprises, Inc. v. Brooks*, 12 Va. App. 890, 894 (1991).

Because as noted *supra* the Commission did not err in affirming the deputy commissioner's denial of Truteam's motion to exclude DeQuintanilla's medical records, the Commission properly considered the medical records DeQuintanilla submitted. These medical records show that DeQuintanilla continues to suffer from significant lower back pain and increased pain while performing basic daily activities since the accident. During the hearing, DeQuintanilla likewise testified that she continues to have pain in her lumbar spine and that the area around her right pelvis still hurts. It is a reasonable inference that the pain DeQuintanilla continues to suffer from is related

to the compensable injuries she sustained from her November 25, 2019 fall. When DeQuintanilla was first treated for her injury, the hospital released her with a note stating that she "[m]ust be cleared by MD before returning to work." She received medical treatment for her injuries from Dr. Gowda, seeing him regularly between December 2019 and November 2020. His most recent patient notes at the time of the hearing stated that DeQuintanilla was still "unable to work due to pain" and indicated that she was to follow up with him in about four weeks. Therefore, there is certainly credible evidence in the record to support the Commission's finding that DeQuintanilla continues to suffer temporary total disability related to the factures of her vertebrae that she sustained from the fall. Consequently, we cannot say that the Commission erred in its unanimous ruling awarding DeQuintanilla continuing temporary total disability benefits since November 25, 2019.

### F. Failure to Make an Explicit Adverse Credibility Determination

In Truteam's fifth assignment of error, it argues, "The Commission erred in its rulings/findings on credibility and its decision that an adverse credibility determination was not necessary/warranted." Truteam contends that the full Commission "erred in not explicitly stating an adverse credibility finding against the claimant" because "[t]he evidence presented proved the claimant was not credible." Essentially, Truteam argues that, because the deputy commissioner and full Commission rejected portions of DeQuintanilla's claim, the record demonstrated that DeQuintanilla was unworthy of belief and, therefore, that the Commission erred in failing to make such a finding on the record.

Given that "the full [C]ommission is the factfinder for [C]ommission proceedings," *Meidan, Inc.*, 62 Va. App. at 442, it is well-established that "[w]e do not judge the credibility of witnesses or weigh the evidence on appeal," *Celanese Fibers Co. v. Johnson*, 229 Va. 117, 121 (1985). Furthermore, "[t]he power to segregate a witness's testimony into the believable, partly believable,

or wholly unbelievable is an exercise of decisional discretion intrinsic to the factfinding task and essential to its proper performance." *Harper v. Commonwealth*, 49 Va. App. 517, 523 (2007).

In this case, the full Commission, noting that it had "reviewed the record in its entirety" and having found some but not all of DeQuintanilla's injuries compensable, concluded that "[t]he denial of some of the claimed injuries did not require an adverse credibility finding." The full Commission stated that DeQuintanilla "alleged many possible injuries, which was necessary to avoid claim preclusion," but noted that the fact that she failed to carry her burden of proof on some of the possible injuries "did not necessitate discrediting the entirety of her testimony." These findings were consistent with the Commission's role as factfinder, and given that "an appellate court lacks the fact-finder's ability to hear and see the witnesses and assess their credibility," *Bratton Est. of Slone v. Selective Ins. Co. of Am.*, 290 Va. 314, 318 (2015) (quoting *Mongold v. Woods*, 278 Va. 196, 204 (2009)), we will not disturb these findings by the Commission concerning DeQuintanilla's credibility. Moreover, "[t]he law does not require the commission to state its reasons for believing one witness over another." *Bullion Hollow Enterprises, Inc. v. Lane*, 14 Va. App. 725, 729 (1992) (quoting *Goodyear Tire & Rubber Co. v. Pierce*, 5 Va. App. 374, 383 (1987)). Therefore, for these reasons, we hold that Truteam has failed to show any error in the Commission's credibility findings or in its decision that an adverse credibility determination was neither necessary nor warranted here.

### G. Commission's *De Novo* Review of the Evidence

In Truteam's sixth assignment of error, it contends that "[t]he Commission erred in failing to conduct a de novo review as required by Virginia Code § 65.2-705." Truteam argues that "review by the Full Commission is to be a *de novo* review" and that "the review by the Commission and opinion issued on June 15, 2021 do not comport with the statutory requirements."

Code § 65.2-705(A) provides that, when an application for review is made to the Commission, the full Commission shall

review the evidence or, if deemed advisable, as soon as practicable, hear the parties at issue, their representatives, and witnesses. The Commission shall make an award which, together with a statement of the findings of fact, rulings of law, and other matters pertinent to the questions at issue, shall be filed with the record of the proceedings.

Truteam offers no argument on brief in support of its contention that the Commission's opinion in this case failed to comport with the requirements of Code § 65.2-705(A). "Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration." *Buchanan v. Buchanan*, 14 Va. App. 53, 56 (1992); *see* Rule 5A:20(e) ("The opening brief of appellant must contain . . . [t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error."). Moreover, the full Commission reviewed the entire record in this case and provided a written opinion setting forth its findings of fact and conclusions of law pertaining to the issues Truteam brought before the Commission. See Code § 65.2-705(A). Therefore, we hold that the full Commission did not err.

## III. CONCLUSION

In short, we cannot say that the Commission erred in its unanimous decision awarding DeQuintanilla continuing temporary total disability benefits for injuries sustained during her fall on November 25, 2019. While Code § 65.2-306(A) generally bars an employee's claim before the Commission for an injury sustained by a willful breach of an employer's safety rule, an employee may overcome this bar by showing that the safety rule was not actually kept alive by any *bona fide* enforcement. In this case, Truteam failed to make a *bona fide* effort to enforce its safety harness rule for its employee, claimant Gloria DeQuintanilla. For two and a half months, DeQuintanilla worked under her "lead man," Travis Harrison, by going into an attic at a worksite on a weekly basis while never wearing a safety harness, as required by the employer's safety rules. However, during all of the time that she worked for Truteam, the record is devoid of any attempt by Harrison to correct her behavior or even to show her how to actually wear a safety harness. In addition,

Harrison himself did not frequently wear a safety harness while he was working in the attic. Furthermore, Harrison's boss and project manager, Richard Leake, reportedly did not regularly visit the job site and thereby check on the adherence to the safety rule either. Therefore, we hold that the Commission did not err in its ruling that DeQuintanilla's claim was not barred under Code § 65.2-306 because the evidence is sufficient to conclude Truteam failed to adequately enforce its own safety rule.

In addition, DeQuintanilla's medical records and her testimony support the Commission's conclusion that DeQuintanilla's ongoing pain and disability are related to her accident. The record demonstrates that DeQuintanilla suffered fractures in her vertebrae from her fall. She continues to suffer from significant pain in her lower back, and the medical records reflect that her doctor continues to keep her out of work due to pain. Therefore, because credible evidence exists in the record to support the Commission's findings, we cannot say that the Commission erred in its ruling that DeQuintanilla has a compensable injury.

We also find no error in the Commission's ruling that affirmed the deputy commissioner's denial of Truteam's motion to exclude DeQuintanilla's medical records. Although the Commission found that DeQuintanilla did not submit her medical records in compliance with the Commission's Rule 4.2, the full Commission noted that "the Deputy Commissioner offered the defendants [Truteam] seven days to decide whether to offer post-hearing evidence. They elected not to do so, cognizant of the potential consequences." Consequently, we hold that the full Commission did not err in finding that the deputy commissioner did not abuse his discretion in denying the motion to exclude because Truteam did not timely make its motion to exclude (hampering the deputy commissioner's ability to conduct the hearing) and because the deputy commissioner fashioned a remedy that was fair to both parties.

In addition, the Commission did not err in affirming the deputy commissioner's granting of DeQuintanilla's motion to quash certain Truteam interrogatories because the issue raised in those particular interrogatories was no longer relevant to issues pending before the Commission. Those interrogatories sought to discover whether DeQuintanilla submitted her medical records in compliance with Commission Rule 4.2. However, the deputy commissioner had already assumed that she had not timely submitted her medical records and had still denied the motion to exclude under this assumption. Therefore, we cannot say that the Commission abused its discretion in affirming the deputy commissioner's decision to quash those particular Truteam interrogatories.

Finally, the Commission did not err in failing to make an explicit adverse credibility determination about DeQuintanilla because there is no requirement that the Commission do so. Truteam failed to show any error in the Commission's credibility findings or in its decision that an adverse credibility determination was neither necessary nor warranted here. Furthermore, the Commission conducted a review of the entire record and issued its statement of facts and conclusions of law in its opinion deciding the issues before it. Nothing in the record supports the conclusion that the Commission did not fulfill its responsibilities under Code § 65.2-705.

Therefore, for all of these reasons, we affirm the Commission's decision.

*Affirmed.*